## EXCHANGE BANK OF ST. LOUIS *vs.* GEORGE W. RICE & another.

A merchant consigned twelve bales of cotton to a factor, and on the same day drew a bill of exchange upon him, expressed on its face to be drawn "against twelve bales of cotton," procured its discount by a bank, and advised the factor of the consignment and the draft. Upon presentment of the draft, the factor refused to accept it, and advised the merchant by letter that he did so because he had not received the bill of lading of the cotton, and that he would accept the draft when the bill was received. Two days later, he received the bill; and a few days afterwards, the bank, to which his letter had meanwhile been shown, again presented the draft to him, together with his letter and a duplicate bill of lading, and requested his acceptance, which he again refused. Upon the subsequent receipt of the cotton, the factor sold it, and credited its proceeds to the merchant, who was his debtor to a larger amount. *Held,* that the bank could not maintain an action against the factor, either upon his promise to accept the draft, or for the proceeds of the cotton.

CONTRACT. After the decision reported 98 Mass. 288, the parties stated the case as follows for the judgment of the superior court:

" On March 8, 1865, John P. Hill, at St. Louis, drew on the defendants, commission merchants in Boston, a draft for $3300, payable thirty days after date to the order of R. R. Pitman & Company, and containing on' its face a memorandum in the terms following : ' against 12 bales cotton.'    On the same day the draft was indorsed to and discounted in the usual course of business by the plaintiffs, and on March 15 was presented by them to the defendants at Boston, who caused it to be noted for non-acceptance. On March 8 Hill wrote to the defendants as follows : ' I ship you to-day per Merritt's Express 12 bales, weighing 5489 pounds, on which I have drawn on you @ 30 days for $3300.'   To this letter the defendants replied on March 14 as follows : ' We now have the pleasure to acknowledge your favor of the 8th.   Your shipment 12 bales cotton per Merritt's Express will receive due attention.   Bill of lading not at hand.   Your draft for $3300 is excessive ; particularly as we shall have no margin on previous shipments, as the market now looks.   We will honor the same, but shall expect you, on receipt of this, to make us shipment of cotton to cover the margin.'   And on March 15 they again wrote to Hill as follows : ' Market for cotton continues weak.   Have no bill lading 12 bales reported as shipped yesterday, and we have felt obliged therefore to have your draft for $3300 noted for non-acceptance.   When bill lading is received, will accept draft.'   The said bill of lading of the cotton ran to the defendants or order, and was received by them March 17, 1865.

" The defendants' letter of March 15 was shown to the plaintiffs by R. R. Pitman & Company March 22, 1865.   The plaintiffs thereupon procured said letter, and the duplicate bill of lading, of Pitman & Company, and on March 27 again presented the draft, with the defendants' said letter and the duplicate bill of lading attached, to the defendants for acceptance.   But the defendants declined to accept the same, and afterwards declined to pay, and they have never paid the same or any part thereof, and the same was duly protested for non-acceptance and non-payment.   The twelve bales of cotton were received by the defendants on April 17, and were sold by them on April 21 for $1349 net, which sum they credited in their current account with

Hill, upon which a balance then was and still is due to the defendants."

The superior court ordered judgment for the defendants; and the plaintiffs appealed. The case was argued at a former term.

*B. F. Thomas & R. Olney*, for the plaintiffs. 1. At the same time that Hill notified the defendants of his consignment of the cotton to them, he informed them that he had drawn against it the draft in suit. This made the acceptance of the draft a condition of the consignment, and bound the cotton and draft indissolubly together. The defendants' letters of the 14th and 15th of March, wherein they promise to accept when the bill of lading is received, show that this was their understanding of the transaction. And not only was this the real transaction, as between the immediate parties; but, by a memorandum on the face of the draft, any party into whose hands it should come was informed and assured that its acceptance and payment were secured by the consignment of the cotton. The plaintiffs bought the draft with the memorandum on it, and in reliance and with a right to rely upon the cotton as security for its payment; and before the bill of lading was received the draft was presented to the defendants, who thus became aware that the plaintiffs were the holders of it and had purchased on faith of its acceptance and payment being secured by the cotton. Under these circumstances, the defendants could not accept the consignment without also accepting the draft. They might decline the consignment and then also decline to accept the draft. But they could not receive the consignment and at the same time dishonor the draft, without a manifest fraud upon both the consignor and the holder. The case of *Allen* v. *Williams*, 12 Pick. 297, proceeds substantially on these principles. The fact of the bill of lading in the present case not running to the bearer, but directly to the defendants, is material only on the question of the technical legal title. The equitable obligation to accept and pay is the same. See 1 Parsons on Notes & Bills, 291; *Michigan State Bank* v. *Gardner*, 15 Gray, 362.

2. Upon the facts, the defendants made a distinct promise to accept, conditional on receipt of the bill of lading. That condi-

tion being fulfilled, the promise became absolute. Though in terms it was a promise to the drawer, in law it enured to the benefit of the holder, on the principle affirmed in *Carnegie* v. *Morrison*, 2 Met. 381, which is, " that when one person, for a valuable consideration, engages with another, by simple contract, to do some act for the benefit of a third, the latter, who would enjoy the benefit of the act, may maintain an action for the breach of such engagement." *Brewer* v. *Dyer*, 7 Cush. 337, 340. And the case is within the English as well as the American rule, inasmuch as the defendants expressly assented to the terms upon which the cotton was consigned to them, and promised Hill, who may be deemed the plaintiffs' agent to receive the promise, to accept upon receipt of the bill of lading. See *Lilly* v. *Hays*, 5 Ad. & El. 548 ; *Walker* v. *Rostron*, 9 M. & W. 411 ; Chit. Con. (8th ed.) 53 ; Addison on Con. (5th ed.) 633, 634, 951 ; Met. Con. 209. By a compliance with the promise, on the part of the defendants, the plaintiffs would have received the full amount of the draft, and by the refusal of compliance they are damnified to the same amount, and are further entitled to interest as damages for the detention.

3. The consideration for the defendants' agreement to accept moved from the plaintiffs. The plaintiffs had an equitable lien upon the cotton to the extent of the draft discounted by them. The promise of the defendants to accept was on condition that they received the bill of lading of cotton of which the plaintiffs were thus the equitable owners. And the defendants received the bill of lading, and then sold the cotton, with knowledge of the interest of the plaintiffs in it. Under any rule, therefore, the promise was to the plaintiffs, and they may count upon it.

4. If the plaintiffs are not entitled to recover the amount of the draft and interest, they are at least entitled to judgment for the amount of the proceeds of the cotton, with interest from April 17, 1865. The defendants took the cotton impressed with a trust for the plaintiffs as holders of the draft, and held and now hold its proceeds to the plaintiffs' use. *Allen* v. *Williams*, 12 Pick. 297.

*H. W. Paine & R. D. Smith*, for the defendants.

GRAY, J. It has already been decided in this case, upon proof of substantially the same facts which are now agreed by the parties, that the plaintiffs could not sue the defendants as acceptors of the draft; because their promise to the drawer to accept it, having been made after the draft had been negotiated to the plaintiffs, did not amount to an acceptance; and the memorandum at the foot of the draft, that it was drawn against twelve bales of cotton, could have no more effect to charge the defendants as acceptors than the mere signature of the drawer, which of itself always imports a promise that he will have funds in the hands of the drawee to meet the draft. 98 Mass. 288.

The defendants' promise to the drawer to accept the draft was a mere chose in action, not negotiable, and upon which no one but he to whom it was made could maintain an action. *Worcester Bank* v. *Wells*, 8 Met. 107. *Luff* v. *Pope*, 5 Hill, 413, and 7 Hill, 577.

The general rule of law is, that a person who is not a party to a simple contract, and from whom no consideration moves, cannot sue on the contract, and consequently that a promise made by one person to another, for the benefit of a third person who is a stranger to the consideration, will not support an action by the latter. And the recent decisions in this Commonwealth and in England have tended to uphold the rule and to narrow the exceptions to it.

The unguarded expressions of Chief Justice Shaw in *Carnegie* v. *Morrison*, 2 Met. 381, and Mr. Justice Bigelow in *Brewer* v. *Dyer*, 7 Cush. 337, to the contrary, on which the learned counsel for the plaintiffs relied at the argument, were afterwards, and while those two distinguished judges continued to hold seats upon this bench, qualified, the limits of the doctrine defined, and a disinclination repeatedly expressed to admit new exceptions to the general rule, in unanimous judgments of the court, drawn up by Mr. Justice Metcalf, and marked by his characteristic legal learning and cautious precision of statement. *Mellen* v. *Whipple*, 1 Gray, 317. *Millard* v. *Baldwin*, 3 Gray, 484. *Field* v. *Crawford*, 6 Gray, 116. *Dow* v. *Clark*, 7 Gray, 198. Those judgments have since been treated as settling the law of Massachusetts

upon this subject. *Colburn* v. *Phillips*, 13 Gray, 64. *Flint* v *Pierce*, 99 Mass. 68.

The first and principal exception, stated by Mr. Justice Metcalf, to the general rule, consists of those cases in which the defendant has in his hands money which in equity and good conscience belongs to the plaintiff, as where one person receives from another money or property as a fund from which certain creditors of the depositor are to be paid, and promises, either expressly, or by implication from his acceptance of the money or property without objection to the terms on which it is delivered to him, to pay such creditors. That class of cases, as was pointed out in 1 Gray, 322, includes *Carnegie* v. *Morrison* and most of the earlier cases in this Commonwealth; as well as the later cases of *Frost* v. *Gage*, 1 Allen, 262, and *Putnam* v. *Field*, 103 Mass. 556.

The only illustration, which the decisions of this court afford, of Mr. Justice Metcalf's second class of exceptions, is *Felton* v. *Dickinson*, 10 Mass. 287, in which it was held, in accordance with a number of early English authorities, and hardly argued against, that a son might sue upon a promise made for his benefit to his father. Those cases, with the proposition on which they have sometimes been supposed to rest, that, by reason of the near relation between parent and child, the latter might be thought to have an interest in the consideration and the contract, and the former to have entered into the contract as his agent, are not now law in England. *Tweddle* v. *Atkinson*, 1 B. & S. 393. Addison on Con. (6th ed.) 1040. Dicey on Parties, 84. And this case does not require us to consider whether they ought still to be followed here.

The third exception, admitted by Mr. Justice Metcalf, is the case of *Brewer* v. *Dyer*, 7 Cush. 337, in which the defendant made a written promise to the lessee of a shop to take his lease (which was under seal) and pay the rent to the lessor according to its terms, entered into possession of the shop with the lessor's knowledge, paid him the rent quarterly for a year, and then before the expiration of the lease left the shop, and was held liable to an action by the lessor for the rent subsequently accruing. That case may perhaps be supported on the ground that

such payment and receipt of the rent after the agreement between the defendant and the lessee warranted the inference of a direct promise by the defendant to the lessor to pay the rent to him for the residue of the term. See *McFarlan* v. *Watson*, 3 Comst. 286. It certainly cannot be reconciled with the later authorities, without limiting it to its own special circumstances, and affords no safe guide in the decision of the present case.

The plaintiffs are then obliged to fall back upon the first exception to the general rule. But they fail to bring their case within that exception, or within any of the authorities to which they have referred us.

In *Carnegie* v. *Morrison*, 2 Met. 381, the defendants, having funds in cash or credit of the plaintiffs' debtor, gave him a letter of credit, which was shown to the plaintiffs, and on the faith of which they drew the bill, for the amount of which they sued the defendants; and the drawing of that bill, whereby they made themselves liable to the drawee thereof, was a consideration moving from them. In *Lilly* v. *Hays*, 5 Ad. & El. 548; *S. C.* 1 Nev. & Per. 26; the defendant, as the jury found, had authorized the plaintiff to be told that the defendant had received the money to his use, and thus promised the plaintiff to pay it to him. So in *Walker* v. *Rostron*, 9 M. & W. 411, the defendant had promised the plaintiff to pay the sum in question. And the rule established by the modern cases in England, as laid down in the text books cited for the plaintiffs, does not permit the person, for whose benefit a promise is made to another person from whom the only consideration moves, to maintain an action against the promisor, unless either the latter has also made an express promise to the plaintiff, or the promisee acted as the plaintiff's agent merely. Met. Con. 209. Addison on Con. (6th ed.) 630, 1041. Chit. Con. (8th ed.) 53. Where the promisee is in fact acting as the agent of a third person, although that is unknown to the promisor, the principal is the real party to the contract, and may therefore sue in his own name on the promise made to his agent. *Sims* v. *Bond*, 5 B. & Ad. 389; *S. C.* 2 Nev. & Man. 608. *Huntington* v. *Knox*, 7 Cush. 371. *Barry* v. *Page*, 10 Gray, 398. *Hunter* v. *Giddings*, 97 Mass. 41. *Ford* v. *Williams*, 21 How. 287

In the case at bar, the plaintiffs had acquired no title in the cotton against which the draft was drawn. The bill of lading was not attached to the draft, or made payable to the holder thereof, or delivered to the plaintiffs. The case is thus distinguished from *Allen* v. *Williams*, 12 Pick. 297, and *Michigan State Bank* v. *Gardner*, 15 Gray, 362, cited at the argument. The cotton was not of sufficient value to pay the draft, and the balance of account between the defendants and the drawer, at the time of their receipt and sale of the cotton, and ever since, was in favor of the defendants. There is no ground therefore for implying a promise from the defendants to the plaintiffs to pay to them either the amount of the draft or the proceeds of the cotton. *Tiernan* v. *Jackson*, 5 Pet. 580. *Cowperthwaite* v. *Sheffield*, 1 Sandf. 416, and 3 Comst. 243. *Winter* v. *Drury*, 1 Selden, 525. *Yates* v. *Bell*, 3 B. & Ald. 643. The plaintiffs did not take the draft, or make advances, upon the faith of any promise of the defendants, or of any actual receipt by them of the cotton or the bill of lading, but solely upon the faith of the drawer's signature and implied promise that the defendants should have funds to meet the draft. The whole consideration for the defendants' promise moved from the drawer and not from the plaintiffs. And the defendants made no promise to the plaintiffs. Their only promise to accept the draft was made to Hill, the drawer, after the draft had been negotiated to the plaintiffs; and there is no proof that the defendants authorized that promise to be shown to the plaintiffs, or that Hill, to whom that promise was made, was an agent of the plaintiffs. His relation to them was that of drawer and payee, not of agent and principal. To infer, as suggested in behalf of the plaintiffs, that he was their agent in receiving the defendants' promise, so that they might sue thereon in their own name, would be unsupported by any facts in the case, and would be an evasion of the rules of law, which will not allow any person, who took the draft before that promise was made, to maintain an action upon that promise, either as an acceptance or a promise to accept. *Judgment for the defendants.*