New England Structural Company *vs.* James Russell Boiler
Works Company & others.

Joseph W. Parker, trustee in bankruptcy, *vs.* James Russell
Boiler Works Company & another.

Suffolk.   October 15, 1918. — November 25, 1918.

Present: Rugg, C. J., Braley, De Courcy, Crosby, & Pierce, JJ.

*Contract,* What constitutes. *Equity Jurisdiction,* To enforce promise made to
another for the plaintiff's benefit. *Agency,* Existence of relation.

A steel contractor agreed to furnish to a builder the structural steel required for a
building to be constructed by the builder for a boiler company.   There was
nothing in the contract to show that in making it the builder was acting as the
agent of the boiler company.   The steel was furnished under this contract as
required for the building, but it was not furnished upon any promise of the
boiler company to the steel contractor.   In the contract between the builder and
the boiler company for the construction of the building there was nothing con-
stituting the builder the agent of the boiler company in making the necessary
contracts for labor and materials which the builder agreed to provide at a cost
not to exceed, including the builder's profit on a percentage basis, the entire
price for which the builder was to construct and complete the building.   The
builder became bankrupt, and the steel contractor brought a suit in equity
against the boiler company and the trustee in bankruptcy of the builder, seek-
ing to have the boiler company ordered to pay the plaintiff for the structural
steel furnished for the building instead of paying the contract price to the
trustee in bankruptcy of the builder.   The plaintiff contended that the evidence
showed that it was the intention of the parties that, upon a statement by the
builder of the amount, the boiler company as principal should pay all bills for
materials furnished by subcontractors.   *Held,* that, even if the contract between
the builder and the boiler company showed such an intention of the parties to
that contract, the promise was not made to the steel contractor but to the
builder, and that the steel contractor could not maintain a suit in equity to
enforce payment to him founded on a promise made for his benefit to another
person, from whom alone the consideration moved and who was not his agent.

Bill in equity, filed in the Superior Court on May 11, 1917,
by the New England Structural Company, a corporation, against
the James Russell Boiler Works Company, a corporation, Herbert
M. Apted and Peter J. McDuffee, copartners doing business under
the firm name of Apted and McDuffee, and (by substitution for
B. Devereux Barker) Joseph W. Parker, as the trustee in bank-
ruptcy of the defendants Apted and McDuffee.   The prayers of

the bill were (1) that the defendant James Russell Boiler Works Company be ordered to pay to the plaintiff the amount due and payable by that defendant for and on account of the steel delivered by the plaintiff to that defendant free and clear from any claim against that defendant by the defendant Parker, (2) that the defendant Parker be declared a trustee for the benefit of the plaintiff of any claim which he had against the defendant boiler works company for the steel so delivered by the plaintiff and (3) for further relief; also a

CROSS BILL by Joseph W. Parker, the trustee in bankruptcy of Herbert M. Apted and Peter M. McDuffee, copartners under the name Apted and McDuffee, against the James Russell Boiler Works Company and the New England Structural Company. The prayers of the cross bill were (1) that the James Russell Boiler Works Company be ordered to pay to the plaintiff (in the cross bill) the amount of $10,553.86 now retained by it from the amounts due from it to this plaintiff free from all claim of lien or equity by the New England Structural Company, with interest thereon, (2) that the claim of the New England Structural Company to a lien or any equitable right whatsoever upon said sum of $10,553.86 in the hands of the defendant James Russell Boiler Works Company be denied and the New England Structural Company remitted to its proof of claim in bankruptcy against the bankrupt estates of Apted and McDuffee, (3) that the James Russell Boiler Works Company, its agents, servants or attorneys be enjoined from paying out said sum of $10,553.86 now retained by it as aforesaid or any part thereof to the New England Structural Company or to any one other than this plaintiff pending the further order of the court, and (4) for further relief.

The following stipulation was filed in court signed in behalf of all the parties to the bill and the cross bill:

"Boston, Mass., January 26, 1918.

"It is hereby stipulated and agreed by and between the parties hereto as follows:

"That structural steel was furnished and delivered by the New England Structural Company, for a boiler shop on the land of the James Russell Boiler Works Company, substantially in accordance with specifications prepared by Monks and Johnson, engineers, and referred to in a contract between the New England

Structural Company and Apted and McDuffee, dated December 5, 1916; that there is due and unpaid for said steel the sum of $10,553.86 and no more; that such sum without interest is due either to the New England Structural Company or to Joseph W. Parker, trustee in bankruptcy of said Apted and McDuffee; and that the James Russell Boiler Works Company now holds the said sum as a stakeholder, and will pay the same without interest either to the New England Structural Company or to the said Joseph W. Parker, trustee, whichever may be found to be entitled thereto, but shall not be held to be liable to both; and that such payment shall constitute a full discharge and satisfaction of the obligation of the James Russell Boiler Works Company to both of said parties on account of such delivery of steel.

"Nothing herein contained shall be construed as affecting the contention of either claimant to the fund as against the other by way of estoppel, admission, or otherwise."

The case was heard by *Chase*, J., a commissioner to take the evidence to be reported to this court having been appointed under Equity Rule 35. The judge made the following memorandum of decision:

"I cannot find that Apted and McDuffee acted as the agents of the James Russell Boiler Works Company in contracting with the plaintiff. Neither do I find that the plaintiff is entitled to the amount claimed by any assignment thereof.

"Treating this as a bill of interpleader, as seems to be contemplated by the stipulation filed, a decree should be entered declaring that the trustee in bankruptcy of Apted and McDuffee is entitled to the funds in the hands of the James Russell Boiler Works Company, and ordering the latter to pay over said amount to said trustee."

Later the judge made a final decree in accordance with his memorandum of decision; and the New England Structural Company appealed.

*C. M. Rogerson*, for the plaintiff the New England Structural Company.

*H. Williams, Jr.,* (*C. E. Fay* with him,) for the trustee in bankruptcy of Apted and McDuffee.

BRALEY, J. It is unnecessary to state at length the allegations of the bill and the cross bill, as the stipulation of the parties entered

into and filed before the cases were tried on the merits clearly designates the questions on which they are at issue. The plaintiff furnished and delivered structural steel for a boiler shop to be built on the land of the defendant boiler works company, the owner, substantially in accordance with specifications prepared by a firm of engineers, who are referred to in the contract between the plaintiff and Apted and McDuffee, defendants in the original bill. We shall, for convenience, refer to the boiler works company as the company and to Apted and McDuffee as the builders. It is to be assumed on the record that the boiler shop has been completed in accordance with the contract, and that the sum of $10,553.86 in the possession of the company is equivalent to the unpaid amount due to the plaintiff. It is agreed that this amount without interest is payable to either the plaintiff or to the trustee in bankruptcy of the builders, the plaintiff in the cross bill, and that payment to either of them under a decree of the court is to be a full discharge and satisfaction of the company's liability. The trial judge having decreed that the trustee was entitled to the money, the case is before us on the plaintiff's appeal.

The grounds upon which the argument for reversal rests are that the company is bound by the terms of the contract made with the plaintiff by the builders to pay to it the amount in dispute because the builders acted as the agents of the company in making the contract under which the steel was furnished, or that to avoid circuity of action the company should be ordered to pay the amount directly to the plaintiff, because under a true construction of the contract between the company and the builders the company engaged to pay for the steel, and, if the amount were paid to the trustee in bankruptcy, he would hold the money not for disbursement among the bankrupt's general creditors, but upon a trust solely for the plaintiff's benefit. The contract between the plaintiff and the builders dated December 5, 1916, and the contract of the company with the builders dated December 14, 1916, copies of which are annexed to the bill, are in writing. While neither contract contains language constituting the builders agents for the company, undoubtedly their agency could be shown by parol evidence and, if proved, the company could be reached as a principal. The plaintiff could pursue its remedy concurrently against the agents and the principal, but could have

but one satisfaction of its demands. *Elwell* v. *State Mutual Life Assurance Co.* 230 Mass. 248.

But the question of agency was an issue of fact upon the evidence introduced at the trial, and, the judge having stated that he could not find that the builders acted as agents for the company, that finding, not appearing to be wrong, is conclusive. The plaintiff's contract with the builders, which preceded the contract with the company, provided in article 8, that the plaintiff was to receive $10,900 "subject to additions and deductions as hereinbefore provided and that such sum shall be paid" by the builders to the plaintiff in current funds as follows: "Eighty-five per cent . . . of the value of labor and material delivered each and every month to be paid for on or before the twelfth . . . of the month next succeeding." And no inference can be drawn from any language found in this contract that the parties intended that the company and not the builders should be the principal. It follows that the steel was not furnished upon any promise made to the plaintiff by the company.

By the material terms of the contract between the builders and the company the sum to be paid to the builders for work and materials included the cost of the material, labor and insurance plus eight per cent, "with the express understanding, however, that the cost including said eight per cent shall not exceed thirty-five thousand dollars," and that such sum shall be paid by the company to the builders in current funds as follows: The builders shall furnish to the company on Thursday of each week a payroll for all labor for the week ending Wednesday evening, which shall thereupon be paid by the company on or before twelve o'clock noon on Friday of the same week; and the builders shall also furnish from time to time to the company a statement of all bills for material, insurance and equipment if hired, as the same are rendered, which bills shall be paid by the company within thirty days from the date of said bills, unless said bills provide for a special discount for payment within a shorter time, in which case the company shall pay within said shorter time. It is further stipulated that, if at any time there shall be evidence of any lien or claim for which if established the company might become liable, and which is chargeable to the builders, the company shall have the right to retain out of any payment due or

thereafter to become due an amount sufficient completely to indemnify it against such lien or claim. The builders also are not to place any order or let "any sub-contracts in connection with the work in excess of $500.00 without first obtaining the approval of the" company.

It is plain that all these provisions are designed to protect the company against liens for labor or materials, and no language is found constituting the builders the company's agent in making the necessary contracts for labor and materials which the builders as principals have bound themselves to provide, but which were not to exceed, including their profit on a percentage basis, the entire price for which they agreed to build and complete the shop. We are unable to perceive any sound reason for reading into an unambiguous building contract words which the parties did not choose to insert, or to adopt a construction which ignores or overrides the primary provision that the builders, in consideration of the agreements therein made by the company, agree with the company, that the builders "shall and will provide all the materials and perform all the work for the construction" of a boiler manufacturing plant on land of the company, as shown on the drawings and described in the specifications prepared by the engineers which "become hereby a part of this contract." While the plaintiff's treasurer testified that the steel was charged on their books of account to the company, it does not appear that any bill was ever rendered or that while the work was in progress a partial payment was made by the company to the plaintiff. And neither this agreement nor the record contains anything to show that the company was to hold and pay to the plaintiff a specific sum.

But, even if the intention of the parties was, as the plaintiff contends, that, upon a statement by the builders of the amount, the company as the principal engaged to pay all bills for material furnished by subordinate contractors, the promise was not made to the plaintiff but to the builders. Whatever may have been decided to the contrary in *Arnold* v. *Lyman,* 17 Mass., 400, *Hall* v. *Marston,* 17 Mass. 575, *Cabot* v. *Haskins,* 3 Pick. 83, and *Carnegie* v. *Morrison,* 2 Met. 381, cited and relied on by the plaintiff, it is settled by *Exchange Bank of St. Louis* v. *Rice,* 107 Mass. 37, that the person for whose benefit a promise is made to another person

from whom alone the consideration moves, cannot maintain an action against the promissor, "unless either the latter has also made an express promise to the plaintiff or the promisee acted as the plaintiff's agent merely."

The plaintiff having failed to bring itself within the exception to the general rule, fully pointed out in *Mellen* v. *Whipple*, 1 Gray, 317, that, an action may be maintained where the defendant "has in his hands money which, in equity and good conscience, belongs to the plaintiff," as where one person receives from another money or property as a fund from which certain creditors of the depositor are to be paid, and promises, "either expressly, or by implication from his acceptance of the money or property without objection to the terms on which it was delivered to him, to pay such creditors," the decree should be affirmed.

*Ordered accordingly.*