Wilson, J.
This is an action of tort in which the plaintiff seeks to recover for damage to a cargo of beans and flour stored on Commonwealth Pier No. 5, South Boston, Massachusetts, including the cost of moving said cargo, alleged to have been caused by the negligence of the defendant while installing ventilators in the roof of the building where the cargo was stored. The plaintiff claimed the defendant carelessly and negligently failed to cover holes cut in the roof for the installation of said ventilators and that rain came in and damaged said cargo. The defendant’s answer was a general denial. The report purports to contain all the material evidence.
There was evidence tending to show that the plaintiff rightfully placed and kept said cargo on the premises from Friday, September 21, 1934, to September 24, 1934, inclusive. It also appeared that the defendant was engaged at *3 that time, under a contract with the Department of Public Works of the Commonwealth, in installing thirty ventilators, and that the work of cutting the holes to receive the same was being done by its subcontractor, who was an independent contractor and did the work for a lump sum. Said subcontractor and his workmen cut one hole, where one of the ventilators was to be placed, and hoisted the lumber for all the work through the same to the roof on Friday, September 21, 1934. Work was then discontinued until Monday morning and said subcontractor covered the hole with boards, tar paper and a waterproof substance, which was the usual and reasonable method to cover such a hole, and that it was done in a workmanlike manner and without negligence.
On Saturday, September 22,1934, a northeast storm, with unusually heavy wind and rain, commenced and continued through Sunday and part of Monday. As a result, a part of the hole covering was loosened and rain came in, causing the damage complained of.
The plaintiff offered and the judge admitted the contract between the defendant and the Department of Public Works “for all purposes,” to which the defendant objected and requested a report.
This contract was clearly admissible. General Laws (Ter. Ed.) Ch. 233, § 76. Brown v. London &c. Indemnity Company, 249 Mass. 511, 515. Grover v. Smead, Mass. Adv. Sh. (1936) 1355. It was the justification for the presence of the defendant upon the premises and set forth in detail its duties and obligations to the Commonwealth and others lawfully thereon.
The trial judge found for the plaintiff and made certain findings and rulings. So much thereof as are here material on the question of liability are as follows:
*4 “ JUDGE’S .FINDINGS & RULINGS.”
“This is an action of tort for damages, on account of the negligent act of the defendant, to a cargo of beans and flour. The answer was a general denial.
“The plaintiff, a steamship company, in September, 1934, brought from California to Commonwealth Pier in Boston, a cargo of beans and flour, and unloaded it on the Pier. The Pier, a large wooden structure, was covered with a tar and gravel roof, which, under normal conditions, was perfectly tight with no danger of any unloaded cargo becoming wet or damaged as a result of a rainstorm.
“Early in September, 1934, the Department of Public Works of the Commonwealth of Massachusetts entered into a contract with the defendant by which the defendant agreed to install in the roof of Commonwealth Pier thirty 16-inch copper ventilators and thirty 12-inch copper ventilators. Article 13 of this contract provided that the contractor ‘ should not sub-let any part of the work without the previous written consent of the Department;’ and that ‘the contractor should be responsible for the acts and omissions of his sub-contractors, if any, and of all persons directly or indirectly employed by him or them in connection with the work. ’
“On Page 7B of the Contract was this clause:
“Attention is called to the fact that the shed is in constant use and all openings made in the roof must be protected to prevent the entrance of water before the ventilators are in place. No extra payment will be made for this necessary protection and .the Contractor shall be held responsible for any damage to the shed or the merchandise therein caused by water entering these openings.
“The preliminary work of installing the ventilators, that is, cutting the holes in the roof and making the wooden frame curbs for the ventilators, was sub-let to one Michael Martiniello, and there was no evidence that the Department of Public Works ever consented or agreed to this sub-letting.
“I find that Martiniello was an independent contractor who did this preliminary work for the defendant for a lump sum of $300.00, and that the work was all *5 done by Martiniello and a carpenter working for him; and neither were employees of the defendant.
“At various points on the roof of the Pier there were square projections or bays which were up a few feet higher than the general roof, and in each of these bays were windows. These windows were the only method of ventilation in the Pier. The rest of the roof of the Pier was flat, covered with a tar and gravel covering.
“On the afternoon of Friday, September 21st, Martiniello with his carpenter went to the Pier, cut one hole in the roof approximately two feet square, and through this hole the lumber which was to be used in making the wooden frame curbs or boxes for the ventilators, was passed by Martiniello to his carpenter on the roof. When all the lumber had been passed onto the roof, Martiniello and the carpenter then proceeded to cover the hole, as no more work was to be done until Monday morning. This was done with boards, a waterproof substance known as plastic and tarred paper. I find that this was the usual and reasonable method used to cover a hole like this in a tar and gravel roof, and that Martiniello was not negligent in doing this work. Sometime on Saturday, a northeast storm with unusually heavy wind and rain commenced and, intermittently, it rained Saturday, Sunday and part of Monday. As a result of this storm, part of this hole-covering was loosened, and when Martiniello’s attention was called to it on Monday morning, he repaired the damage by putting on a patch.
“As a result of this storm, water came through the roof, and the portion of the floor, near which the cargo was located, was wet, and some of the water damaged the flour, the lima beans and the white beans, all of which were packed in 100-pound bags.
“There was also evidence that there was a sag in the tar and gravel roof not far from where this hole was cut.
“I find as a fact that, although the hole in the roof was temporarily covered up by Martiniello in a workmanlike manner, on account of the severity of the storm, such covering did not prevent the water leaking through; and, inasmuch as the contract between the Department of Public Works and the defendant pro *6 vided that ‘the contractor shall he held responsible for any damage to the shed or the merchandise therein caused by water entering these openings,’ I rule that the defendant was virtually an insurer against damage from water. I therefore find that the defendant is responsible for the damage caused by this leak in the roof. ”
The defendant seasonably presented ten, requests for rulings. The trial court refused numbers 1, 2, 3, 4, 5, 7, 9 and 10, and gave 6 arid 8.
The duty of the trial judge,. sitting without a jury, has been repeatedly stated, In Adamaitis v. Metropolitan Life Insurance Company, Mass. Adv. Sh. (1936) 1601, 1604, it was stated in this language:
“The trial judge . '. . performs a dual function. He must adopt correct rules of law for his guidance and find the facts as guided by these rules. And upon proper requests therefor he must state the rules of law adopted for his guidance as a trier of fact in order that the right of review may be preserved.”
But he was not obliged to. make findings of -fact, Castano v. Leone, 278 Mass. 429, 431, nor was he compelled to give requests which had become immaterial because of facts expressly found and which clearly appear in the record. Bresnick v. Heath, Mass. Adv. Sh. (1935) 2297, 2301.
The court found Martiniello was an independent contractor. That was a. question.of fact for. his determination. Marston v. Reynolds, 211 Mass., 590, 592.
The principal contention of the defendant is that the trial judge was in error in rulirig that “the defendant by virtue of its contract with the Department of Public Works of the Commonwealth of. Massachusetts was an insurer against all damages which might result from cutting holes in the roof of the Pier.” The determination of this question seems to us to be conclusive of the case. .
*7 The relationship of an insurer must have arisen, if indeed it could have been properly found to exist, from the contract above referred to between the Board of Public Works and the defendant. The plaintiff was not a party to this contract.
The general rule of law, under such circumstances, is that one who is not a party to a contract cannot sue in respect of a breach of duty arising out of the contract. Davidson v. Nichols, 11 Allen 514, 517. Exchange Bank of St. Louis v. Rice, 107 Mass. 37, 41, and cases cited. Borden v. Boardman, 157 Mass. 410, and cases cited. Close v. Hatch, 180 Mass. 194, 196. New England Structural Co. v. James Russell Boiler Works Co., 231 Mass. 274, 278. Codman v. Deland, 231 Mass. 344, 347. Dunbar v. Broomfield, 247 Mass. 372, 382. Dahlstrom v. Evatt Construction Co., 256 Mass. 404, 413. Gilberti v. James Barrett Mfg. Co., 266 Mass. 70. Pike v. Anglo-South American Trust Co., 267 Mass. 130, 131. Ehrlich v. Johnson Service Co., 272 Mass. 385, 388. Central Supply Co. v. United States Fidelity and Guaranty Co., 273 Mass. 139, 143.
The general rule also obtains in equity.

Central Supply Co. v. United States Fidelity and Guaranty Co., supra.

This rule is subject to some exceptions. See, for example, cases like Gardner v. Denison, 217 Mass. 492, Green v. Green, Mass. Adv. Sh. (1937) 991, which allowed recovery in contract on the principle that the parent was the agent of the plaintiff, his son, to enter into the contract.
In other cases recovery has been permitted because a refusal would allow the defendant to retain in his hands money which in équity and good conscience belongs to the plaintiff. Mellen v. Whipple, 1 Gray 321, 322. Bianconi v. Crowley, 256 Mass. 187, 189.
*8 The case at bar is not within any of the exceptions to the general rule recognized in this Commonwealth.
As to the rule in other jurisdictions see 41 A. L. R. 10. 81 A. L. R. 1271 note, and see Marvin Safe Co. v. Ward, 46 N. J. L. 19, 23.
We cannot say the clause in the contract above set out was not inserted for the benefit of the Commonwealth and not the plaintiff and others occupying the premises. Ehrlich v. Johnson Service Co., 272 Mass. 385, 390.
The instant case is an action of tort for negligence and the trial court found there was no negligence on the part of the defendant or its sub-contractor. There is nothing in the report to warrant the conclusion that the work done by the defendant or its subcontractor created a nuisance.
The only duty or obligation imposed upon the defendant, either by the contract or by any implication, was to see to it that the work contemplated by the contract was performed in a good and workmanlike manner and free from negligence. The trial court found there was no breach of this duty by the defendant or its subcontractor.
It seems clear to us, therefore, .that the trial court erred in finding that the defendant was in the position of an insurer against damage to the merchandise in the plaintiff’s possession. And the plaintiff cannot recover for such damage against this defendant, because the breach of duty upon which it must rely grew out of the contract to which it was not a party.
We have not dealt with the claim of error growing out of the admissibility of the report of the “Pier Agent” of the plaintiff to the plaintiff company nor with the rulings regarding damages recoverable,, because in our view of the case they are now immaterial.
*9 The court erred in refusing the defendant’s ninth request.
It is unnecessary to discuss the. other requests in detail.
Judgment will be entered for the defendant. General Laws (Ter. Ed.) Ch. 231, §§110-124. Andrade v. Hanley, 289 Mass. 335, 337.