WATKINS *v.* MINOR.

1. SPECIFIC PERFORMANCE—LAND CONTRACT—VALIDITY—SUNDAY CONTRACT—EVIDENCE.

In proceedings for the specific performance of an option contract for the sale of land, where the defense was that the contract was void because signed on Sunday, evidence, although contradictory, *held*, to support the conclusion of the trial judge that it was signed on Saturday.

2. SAME—ORAL AGREEMENT VOID IF MADE ON SUNDAY.

A modification, by oral agreement, of said contract, if made on Sunday, would be void and unenforceable by any of the parties to it.

3. CONTRACTS—DELIVERY—TIME—DEPOSIT IN MAIL—SUNDAY CONTRACT—PRINCIPAL AND AGENT.

Since an option speaks from its delivery, and plaintiff, by requesting that when the option was signed in Detroit by defendant's wife it be returned to him at Marysville by mail, made the post office department his agent, deposit in a government mail box was delivery to him.

4. APPEAL AND ERROR—SUPREME COURT HEARS CHANCERY CASES DE NOVO.

Although the Supreme Court hears chancery cases *de novo*, and must itself determine where the truth is on disputed questions of fact, it cannot be unmindful of the fact that the trial judge had an opportunity to see the witnesses and observe their demeanor, and his findings, while not controlling, are helpful.

5. SPECIFIC PERFORMANCE—LAND CONTRACT—SUNDAY CONTRACT—EVIDENCE—SUFFICIENCY.

Where the evidence was in conflict, and the finding of the trial judge that the option was not signed and mailed in Detroit on Sunday evening, as claimed by defendants, is the most probable, under the evidence that it did not reach Marysville until Wednesday, it will be sustained by the Supreme Court, on appeal.

6. SAME—NOT A MATTER OF RIGHT—EVIDENCE—ADMISSIBILITY.

Since specific performance is not a matter of right but rests in the sound discretion of the court, testimony as to the extent of proposed business development for which said land was sought, and that it was situated in the very heart of said development, was admissible for the purpose of showing that the relief asked was the only adequate one, and also furnishing a reason for defendants' refusal to perform.

7. SAME—LAND CONTRACTS—CONTENTS OF ORIGINAL CONTROLLING.

Language found in purported copies of the option, not found in the original, as recorded and relied upon, will be disregarded by the courts.

8. SAME—DELIVERY—TENDER—ACCEPTANCE.

Where the option called for payment in cash within a certain time, and before the expiration of the time the purchase price and a deed for execution were tendered and refused, no question of acceptance or tender is involved.

9. DEEDS—ABSOLUTE FEE—ATTEMPT TO RESTRAIN ALIENATION VOID.

Where an absolute estate in fee by warranty deed was conveyed, an attempt to restrain alienation during the lifetime of the grantor was void.

10. SAME—CONSIDERATION TO WIFE WHO JOINS SOLELY TO BAR DOWER RIGHTS.

Whether the check given for the purchase price of land, which was deposited in the bank and used for the family, was in effect a consideration to the wife who joined with her husband solely to bar her inchoate right of dower, as determined by the trial judge, is unimportant in the absence of the citing of any authority holding that an independent consideration moving directly to her is necessary.

Appeal from St. Clair; Law (Eugene F.), J. Submitted April 21, 1921. (Docket No. 28.) Decided June 6, 1921. Rehearing denied October 3, 1921.

Bill by William H. Watkins against Clarence B. Minor and others for the specific performance of an

optional land contract. From a decree for plaintiff, defendants appeal. Affirmed.

*Burt D. Cady* (*Walsh & Walsh,* of counsel), for plaintiff.

*William Henry Gallagher,* for defendants.

FELLOWS, J. This is a bill filed for the specific performance of an option contract signed by the defendants and bearing date of May 10, 1919. This date was on a Saturday and the parties and their witnesses are in direct conflict as to whether the option was in fact signed or delivered on the following day or on a secular day. Many of the interesting legal questions presented are dependent upon the solution of this question of fact. We shall state the claims of the parties upon this controverted question as we proceed.

John R. Lee and C. Harold Wills had long been associated with the Ford Motor Car Company. They severed their connection with this company and planned the establishment of a plant for manufacturing automobiles at some place away from Detroit where they could acquire sufficient lands for their plant and for residences for their employees with the view of laying out a modern and model industrial city. Marysville, a small town near and just below Port Huron on the St. Clair river, appeared to be well located for their purpose. Plaintiff was an active member of the Chamber of Commerce of Port Huron and had been associated in the Liberty Loan drive with a Dr. James of Marysville. These two men in April of 1919 undertook the work of securing options for sufficient lands for the Wills-Lee enterprise. They were not financially interested in the enterprise and received no compensation for their services which were prompted solely by civic pride.

Defendant Clarence B. Minor was the owner of two

pieces of farm land, one of 40 acres and one of 37 acres, located near Marysville and within the area of the proposed development. It was not worth at that time to exceed $100 per acre and one of the pieces had been placed in the hands of a real estate agent for sale at that figure. Mr. Minor had lived in Detroit some years and was then working nights for Dodge Bros. Dr. James wrote him and on May 10th he went to Marysville taking with him his deeds to the land. He arrived there about 1 o'clock and spent the afternoon with his brother and others with whom he was acquainted. In the evening he went to Dr. James' residence where he found plaintiff and Dr. and Mrs. James. After some "bantering" a price of $9,000 was agreed upon for the 77 acres and Mrs. James drew the option on a typewriter. She was not an expert typist and was unfamiliar with the use of carbon paper, but did make a copy of the option after she had completed it as it was the custom of plaintiff and Dr. James to give the optionor a copy of the option. It should be stated at this point that there is no claim in the case of fraud or overreaching in procuring the option. Mr. Minor was told that the land was wanted for factory purposes and does not deny that the purchase price was agreed upon. He does deny, however, that he signed the option that night. Plaintiff and Dr. and Mrs. James all testify that he did. The trial judge believed the testimony of plaintiff and Dr. and Mrs. James and in this conclusion we agree. Mr. Minor was given a check for $100, the consideration of the option, and receipted for it.

Elizabeth Minor is the mother of Clarence B. Minor; Elizabeth F. is his wife. Elizabeth had the life use of the 40. On the evening of May 10th, it was agreed by plaintiff and Dr. James that they would meet defendant Clarence B. the next day at the home of his brother where Elizabeth was then living. Pursuant to this

arrangement the parties met on Sunday at the home of the brother of defendant Clarence B. What occurred at this meeting is in the main in hopeless conflict. It is agreed that Elizabeth signed the option at this time. Plaintiff does not claim that she is bound by the agreement signed by her on Sunday and the bill was dismissed as to her by the trial court. By a stipulation filed in this court it appears that she has since conveyed her interest so that we are not concerned with any question as to her rights in the 40. Defendant Clarence B. insists that it was on this occasion that he signed the option. In this he is supported by some of his relatives who were present. As already stated we are satisfied that he signed it the evening before at Dr. James' residence. The option as there signed provided for the payment in cash of the balance of the purchase price within six months. We are satisfied that in the Sunday negotiations at the Minor home it was talked that the mother, Elizabeth Minor, was to have either a mortgage or the interest on a mortgage for $2,000. Her son seemed to be anxious to protect her interest and both Dr. James and plaintiff were willing to make the payments as the parties desired. Dr. James testifies that he made a memorandum as to the mortgage and agreed to have it later put in the option. We entertained no doubt that had defendants deeded the property when requested plaintiff would have acceded to any reasonable request as to the terms of payment irrespective of the precise language of the contract. But it is manifest that if Elizabeth was not bound by her agreement made on Sunday, and she was not, neither was plaintiff bound nor was Dr. James. If there were any oral agreement made on Sunday to modify the terms of payment of the original option it was void and unenforceable by any of the parties to it. We are satisfied, notwithstanding defendants' contention to the contrary, that no agreement as to

the mortgage was inserted in the option either in pencil or by pen and ink. No such agreement appears in the original option which was recorded, and which is the option here relied upon. Elizabeth F. is quite positive that the one she signed had such a provision written in ink, but neither the original option nor any of the purported copies, as we understand this record, have any clauses written in ink, all of them outside the formal parts being typewritten. Defendants' counsel seems to concede that she is mistaken in this regard. The defendant Elizabeth was not bound by the Sunday contract; the defendant Clarence B. signed and delivered the option on Saturday evening and is bound by its terms. Any agreement, if one was made on Sunday, to modify its terms was void. This leaves for consideration of the disputed facts the question of whether defendant Elizabeth F., who joined in the contract to bar her inchoate right of dower, is also bound.

After Dr. James and plaintiff had left the home of defendant's brother, Mr. Minor had his dinner and then returned to Detroit, arriving at his home about half past five. It is the claim of defendants that Elizabeth F. signed and mailed the option that night and is, therefore, not bound. We agree with defendants' counsel that the option speaks from its delivery and that by requesting that the option when signed by her should be returned to him by mail, Dr. James made the post office department his agent, and a deposit of it in a government mail box was a delivery to him. The trial judge who heard and saw these two defendants and the brother of Mrs. Minor, who corroborated them, disbelieved their testimony. It is true as claimed by defendants' counsel that we hear chancery cases *de novo* and must ourselves determine where the truth is on disputed questions of fact. But we cannot be

214—Mich.—25.

unmindful of the fact that the trial judge has an opportunity to observe the demeanor of a witness on the stand, and that his findings are helpful although not controlling. The circumstances which surround this transaction are absolutely at variance with defendants' claim; we shall state some of them. Mr. Minor reached home at 5:30 Sunday afternoon; this was the time he was due to begin work. He "punched in" at the Dodge plant at 6:55; it took him from 25 to 45 minutes to go from his home to the plant; during the remaining time he had his supper which presumably took at least some time to prepare; he also must have taken a little time to get into his working clothes. It seems somewhat out of the ordinary that there would be sufficient time remaining for him and his wife to discuss this, to them, important transaction. The option did not reach Marysville until Wednesday. If it had been deposited in the mail box in Detroit on Sunday evening as claimed, or at any time during the day on Monday, it should in due course of mail have reached Marysville not later than Tuesday morning. The $100 check given for the option was not deposited in the bank until Tuesday. If the option was signed and mailed the same day the check was deposited, it would have reached Marysville in due course of the mail at the time it did. It seems more probable that this was done than that the transaction occurred as claimed by defendants.

Over objection plaintiff was permitted to show the extent of the Wills-Lee development and the fact that the 77 acres here involved are in the very heart of it. This testimony was competent. The relief here sought is not a matter of right but rests in the sound discretion of the court. It was quite proper to show that compensation for the breach of the contract in money was out of the question and that the particular relief here asked was the only adequate relief that could be

granted. In addition it furnished a reason, and a very cogent one, for the refusal of defendants to carry out the bargain. They had everything to gain and nothing to lose. It would be difficult to reconcile the testimony on the theory of an honest mistake. The trial judge with the witnesses before him was confronted with the problem of determining to whom credence should be given. He reached the conclusion that he could not accept as credible the testimony of defendants and their witnesses on the material questions involved. A careful reading of this record, a consideration of all the circumstances revealed by it, satisfies us that he was correct in this conclusion.

Our conclusion on the facts eliminates some but not all of the legal questions discussed by defendants' counsel in his very able brief. We do not overlook his contention that the somewhat indefinite language with reference to the mortgage found in the purported copies of the option is of such a character as to make the option insufficient under the statute of frauds. But this language does not appear in the original option, the one recorded and here relied upon. The payment there provided for was a payment in cash. Any discussion as to what the rights of the parties would have been had this language been inserted in the original option would be purely academic. The plaintiff before the expiration of the option tendered the purchase price and a deed for execution, both of which were refused, so that no question of acceptance or tender is involved. This leaves for consideration but two other questions.

Defendant Clarence B. Minor acquired title to the 40 acres by deed from Elizabeth Minor. The deed was the ordinary form of warranty deed. It reserved a life estate in the grantor. After such reservation, the following clause appears:

"and said second party is not to convey or encumber said property during the lifetime of said first party."

The trial judge was of the opinion that this restriction of alienation was void upon the authority of *Mandlebaum* v. *McDonell*, 29 Mich. 78. Defendants' counsel here contends that such conclusion is erroneous. He insists that *Bassett* v. *Budlong*, 77 Mich. 338, modified the earlier holding and in any event *Mandlebaum* v. *McDonell* was incorrectly decided. He cites numerous authorities from other jurisdictions to sustain his contention. We do not think the *Bassett Case* in any way modifies the *Mandlebaum Case*. In the *Bassett Case* we had before us the construction of an instrument; construing it from its four corners and in the light of the surrounding facts and circumstances, we there held that it did not convey the fee to Annette Budlong and was not so intended. We there said:

"When it is considered that he was a farmer and a householder, and continued his residence upon the premises until his death, and retained the use and enjoyment of his personal property, it is evident that, by executing the deed to his wife, he did not intend to part with the title to his real estate unless the contingency should occur of his dying before his wife died. That event did not occur, and the estate never vested in his wife."

The *Bassett Case* in no way modified the holding in the *Mandlebaum Case* that where the absolute fee was conveyed the attempted restraint on alienation was void. Nor are we disposed to question the holding of the earlier case. Mr. Justice CHRISTIANCY, who there wrote for the court, in an exhaustive opinion reviews the authorities at great length and concludes:

"The only safe rule of decision is to hold, as I understand the common law for ages to have been, that a condition or restriction which would suspend all power

of alienation for a single day, is inconsistent with the estate granted, unreasonable and void.

"Certainty in the law of real estate, as to the incidents and nature of the several species of estates and the effect of the recognized instruments and modes of transfer is of too much importance to be sacrificed to the unskilfulness, the whims or caprices of a few peculiar individuals in isolated cases."

The case was cited with approval in *Bennett* v. *Chapin*, 77 Mich. 526 (7 L. R. A. 377), and was followed in *Re Estate of Schilling*, 102 Mich. 612, where we said:

"The contention that the second paragraph is void has great force. As to the four-fifths of the estate which was vested in the first named children in fee, it is void; for one of the essential features of an estate in fee is the right to convey, and when a testator attempts to attach a restriction on such right to convey such restraint is void as repugnant to the nature of the estate."

In the instant case the deed to Clarence B. Minor conveyed an absolute fee subject to the life estate. The restriction was void.

Defendants' counsel also insists that there was no consideration moving to defendant Elizabeth F. Minor. The trial judge concluded that inasmuch as the check was deposited in the bank and was used for the family there was a consideration to her. But independent of this defendants' counsel has cited us no authority holding that there must be an independent consideration moving directly to the wife who joins with her husband solely to bar her inchoate right of dower.

It follows from what we have said that the decree of the court below must be affirmed. Plaintiff will recover costs of this court.

STEERE, C. J., and MOORE, WIEST, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.