CONSTANCE R. WINSTANLEY & another *vs.* WILLIAM J. CHAPMAN & another.

Plymouth.    November 7, 1949. — December 23, 1949.

Present: QUA, C.J., LUMMUS, RONAN, & WILKINS, JJ.

*Equity Jurisdiction*, Specific performance. *Frauds, Statute of. Contract*, Option, For sale of real estate, Performance and breach. *Agency*, What constitutes. *Rule against Perpetuities.*

Reported evidence at the hearing of a suit against a husband and wife for specific performance of an oral agreement to sell real estate owned by both of them warranted a finding that the husband authorized his wife to act for him in the matter of the sale.

The rule against perpetuities had no application to an agreement by the owner of real estate which gave to a lessee a personal option to purchase, sums paid as rent to be applied on the purchase price, although the agreement specified no time for the exercise of the option.

In a suit in equity for specific performance of an oral agreement to sell real estate, the doctrine of part performance precluded the defendant from relying on the statute of frauds, G. L. (Ter. Ed.) c. 259, § 1, Fourth, where it appeared that the property was let to the plaintiff by the defendant with an option to purchase for a certain price, that rent paid in the interim was to be applied on account of the purchase price, and that the plaintiff took possession under the agreement, moved his business to the premises, paid the agreed rent, and made and paid for substantial improvements to the premises.

BILL IN EQUITY, filed in the Superior Court with a writ of summons and attachment dated January 17, 1948.

The suit was heard by *Morton*, J.

*H. H. Davis*, for the defendants.

*E. A. Egan*, (*J. J. Geogan* with him,) for the plaintiffs.

LUMMUS, J.   The defendants are husband and wife, and have since 1935 owned a house and land in Whitman. The plaintiffs' bill in equity sets forth that in 1940 the defendants orally agreed with the plaintiffs that if the plaintiffs would move their nursing and rest home into the defendants' house, the latter would sell the premises to the plaintiffs for $6,500 at any time during the occupancy by the plaintiffs of the premises, and that the rent of $50 a month paid by the plaintiffs would be applied on account of the purchase price. The plaintiffs moved in. In 1944 the price was changed in writing to $6,000 upon payment by the plaintiffs for painting. The bill alleges further that the plaintiffs, in reliance on the agreement, have paid large sums of money for the improvement of the premises, to the amount of $5,437.68, and also $4,200 on account of the purchase price. On December 6, 1947, the plaintiffs offered to buy under the agreement, but the defendants refused to sell, and notified the plaintiffs to quit the premises. The bill sought specific performance. The answer set up, among other defences, the statute of frauds.

The judge found to be true the facts set forth in the bill. He found that while the woman defendant did most of the talking with the plaintiffs, "the male defendant authorized his wife to act for him in the matter of the leasing and sale of the premises, was fully acquainted with all that was being done and assented thereto." He found that $2,170.13 had been paid by the plaintiffs on account of the purchase price, leaving a balance due of $3,829.87. He found that the occupation and improvements constitute part performance, taking the case out of the statute of frauds. The final decree was for specific performance upon payment to the defendants of $3,829.87, with costs. The defendants appealed.

The evidence is reported. The plaintiff Winstanley testified that in 1939 or 1940, she had a talk with the woman defendant, in the presence of her husband, the other defendant, in which the woman defendant said, "You girls are going to take the house for fifty dollars a month on the option of buying it at that price, and it will go toward your payment," to which the plaintiff Winstanley assented. No time limit was fixed for the exercise of the option, she testified. There was testimony that both defendants signed notes for money which was borrowed by the plaintiffs, as both defendants knew, for improvements on the property. All the improvements were paid for by the plaintiffs. The plaintiff Chamberlain testified that in October, 1939, in the presence of her husband the woman defendant said that she brought him up "to meet the girls who were deciding later to take over as rental with an option of buying for $6,500." We think that the finding of the judge that "the male defendant authorized his wife to act for him in the matter of the leasing and sale of the premises, was fully acquainted with all that was being done and assented thereto," was supported by the evidence. *Gordon* v. *O'Brien,* 320 Mass. 739, 742.

The defendants contend that if they gave to the plaintiffs "a continuing option of purchase unlimited in point of time, it is void ab initio, because it attempts to create a contingent future interest which may not vest within the period limited by the Rule against Perpetuities," citing *Eastman Marble Co.* v. *Vermont Marble Co.* 236 Mass. 138, 152, 153. That case is inapplicable. Here the agreement was not intended to bind or to benefit the heirs of the parties. The option was to be exercised by the plaintiffs themselves, necessarily within their lives.

The defendants set up the statute of frauds, G. L. (Ter. Ed.) c. 259, § 1, Fourth, which provides that no action shall be brought "Upon a contract for the sale of lands, tenements or hereditaments or of any interest in or concerning them" unless the contract or some memorandum or note thereof is in writing and signed by the party to be

charged therewith or his agent. It is not contended that there is any writing satisfying the statute. The plaintiffs rely upon the doctrine of part performance. In *Glass* v. *Hulbert*, 102 Mass. 24, 35, 36, Wells, J., said, "The fraud most commonly treated as taking an agreement out of the statute of frauds is that which consists in setting up the statute against its performance, after the other party has been induced to make expenditures, or a change of situation in regard to the subject matter of the agreement, or upon the supposition that it was to be carried into execution, and the assumption of rights thereby to be acquired; so that the refusal to complete the execution of the agreement is not merely a denial of rights which it was intended to confer, but the infliction of an unjust and unconscientious injury and loss." See also *Curran* v. *Magee*, 244 Mass. 1, 5, 6; *Levin* v. *Rose*, 302 Mass. 378, 381, 382. In *Harrell* v. *Sonnabend*, 191 Mass. 310, the plaintiff, in reliance upon the oral promise of the defendant to give him a lease of a tailor shop, gave up his old place of business (as did the plaintiffs in this case), took possession of the premises promised him, made extensive alterations at large expense, and moved his business thereto. The plaintiff was granted specific performance of the oral promise. In *Williams* v. *Carty*, 205 Mass. 396, the defendant orally agreed to convey a farm to the plaintiff, but in fact conveyed to the plaintiff only a part; the plaintiff went into possession supposing that she had title to the whole, leaving her home elsewhere and making extensive improvements upon the farm. She was granted specific performance. In *Nichols* v. *Sanborn*, 320 Mass. 436, occupation and improvements were held to constitute part performance. We think that the present case falls within the doctrine of part performance, and that there was no error in entering a decree for the plaintiffs.

*Decree affirmed with costs.*