## LANTIS v. COOK.

1. PERPETUITIES—COMMON LAW—REAL PROPERTY—RESTRAINTS ON ALIENATION.

   Statutory provisions governing the suspension of the absolute power of alienation of land superseded the common-law rule against perpetuities, as to real property, for the period from 1847 to 1949 (CL 1948, §§ 554.14, 554.15, as repealed by PA 1949, No 38).

2. SAME—COMMON LAW—STATUTES—RESTRAINTS ON ALIENATION.

   The common-law rule against perpetuities has no application to case involving validity of deed which was executed while such rule had been superseded as to real estate by statutory provi-

REFERENCES FOR POINTS IN HEADNOTES

[1]  41 Am Jur, Perpetuities and Restraints on Alienation § 9 *et seq.*
[2]  41 Am Jur, Perpetuities and Restraints on Alienation § 10.
[3, 5–7]  See, generally, 41 Am Jur, Perpetuities and Restraints on Alienation §§ 40, 41.
[3, 5–7]  Option to purchase as violation of rule against perpetuities or rule forbidding restraints on alienation. 162 ALR 581.
[4]  41 Am Jur, Perpetuities and Restraints on Alienation §§ 9, 10, 15.

sions governing the suspension of the absolute power of alienation (CL 1948, §§ 554.14, 554.15, as repealed by PA 1949, No 38).

3. DEEDS—OPTION TO REPURCHASE—SUSPENSION OF POWER OF ALIENATION—STATUTES.

Option clause in 1926 deed, whereby property was conveyed to the grantees as husband and wife, jointly with right of survivorship, giving the grantors the first privilege to repurchase the premises at any future time the grantees did not wish to use the property as a home, at the price stated in this deed, $4,000, was not void under statute relating to suspension of the absolute power of alienation, since it did not work a suspension of such power as the optionors and optionees, together, could have conveyed an absolute fee in possession and had a suspension resulted the period would not have been longer than 2 lives in being at the creation of the estate (CL 1948, §§ 554.14, 554.15).

4. ESTATES—ALIENABILITY—STATUTES—COMMON LAW.

Statutes with respect to the suspension of the absolute power of alienation do not modify the common-law rules prohibiting conditions or provisions directly in restraint of alienation for such conditions, when applied to a fee simple estate, are void without regard to the period of time (CL 1948, §§ 554.14, 554.15).

5. DEEDS—OPTION TO REPURCHASE—RESTRAINT ON ALIENATION.

An option provision whereby the grantors were designated in their warranty deed to grantees as having the first privilege to repurchase the premises at any future time at the price stated in the deed, $4,000, in case the grantees did not care to continue using the place as a home, did not constitute an unlawful restraint on alienation of the premises and was valid, since there was not a direct restraint on alienation.

6. SAME—OPTION—CONDITION PRECEDENT.

An option in a deed, created to enable a particular person to buy, and not to prevent anyone from selling and to arise upon the happening of a condition precedent, is not regarded as a direct restraint on alienation and is valid even though it specifies a fixed price.

7. SAME—OPTION TO REPURCHASE—INTENT—PAROL EVIDENCE.

An option to grantors to repurchase premises at any time the grantors did not want to use the premises as a home was exercisable at the death of the grantees, since there was then a total lack of such a wish or cessation thereof, and parol

evidence was admissible to explain the option and intent of the parties.

SHARPE and BOYLES, JJ., dissenting.

Appeal from Ingham; Salmon (Marvin, J.), J. Submitted October 8, 1954. (Docket No. 51, Calendar No. 46,221.) Decided April 14, 1955. Rehearing denied June 7, 1955.

Bill by Daniel R. Lantis and Opal E. Lantis against Lillie E. Cook and Hattie O. Brower, individually and as coexecutrices of the estate of Alice M. Fletcher, deceased, for specific performance of an option clause in a warranty deed. Decree for plaintiffs. Defendants appeal. Affirmed.

*MacLean & Seaman,* for plaintiffs.

*Burney E. Brower* and *Kleinstiver & Anderson,* for defendants.

SHARPE, J. (*dissenting*). This is a bill filed for specific performance of an option clause in a warranty deed executed February 19, 1926, by plaintiffs, as grantors, to Clarence L. Brownell and Alice M. Brownell, husband and wife, jointly with right of survivorship. The option clause is as follows:

"If the second parties do not wish at any time to use the property as a home, the first parties shall have the first privilege to purchase the above-described property at any future time at the price stated in this deed, *viz.*, $4,000."

The undisputed facts are as follows: The property consists of a house and 2 lots in the village of Stockbridge, Ingham county, Michigan. The house was built by plaintiff, Daniel R. Lantis, in the year 1915. Clarence L. Brownell and Alice M. Brownell, his wife, were parents of Daniel R. Lantis' first wife

who died in 1923. After her death Mr. and Mrs.
Brownell moved in with Daniel R. Lantis until 1925
when Mr. Lantis remarried. Mr. and Mrs. Brownell
lived in the home until Mr. Brownell died in about
1930 or 1931. Mrs. Brownell continued to live in the
home until her death in 1952. Some time after the
death of Mr. Brownell, Mrs. Brownell married a Mr.
Fletcher who predeceased her. The Brownells
always kept the property up, improved and mod-
ernized it. The property has a present value of ap-
proximately $12,000. Defendants are sisters of Mrs.
Brownell.

In July, 1952, plaintiff, Daniel R. Lantis, tendered
the sum of $4,000 to defendants for a deed of the
property, but the same was refused.

In the case at bar the property did not automati-
cally revert back to the plaintiffs at the time of the
death of Mrs. Fletcher. Before title could be trans-
ferred, the plaintiffs had to pay the sum of $4,000
for the property.

It follows that the deed to the property delivered
to the Brownells was clearly a fee simple and not a
life estate. See 1 Restatement, Property, § 14, 1
American Law of Property, § 2.3 *et seq.*, and 2
Thompson on Real Property, § 786.

The issue of this option being a restraint on aliena-
tion was not raised on the trial in the circuit court
or on appeal to the Supreme Court, but because the
facts in this case may present such a question, we, on
our own motion, directed the attorneys for the re-
spective parties to file a brief on this question. See
Michigan Court Rule No 72 (1945); Honigman, Mich-
igan Court Rules Annotated, p 693; CL 1948, § 616.1
(Stat Ann § 27.838).

Briefs have been filed and this issue of restraint
on alienation of real property is now before us as
the principal issue to be determined. It is a cardinal
principle of our Anglo-American system of property

law which we derived from the common law that a vested estate in fee simple should be alienable at all times. See *Mandlebaum* v. *McDonell,* 29 Mich 78 (18 Am Rep 61) ; 4 Restatement, Property, p 2123, part 1, and 6 American Law of Property, §§ 26.1–26.5.

The majority of the American decisions support this Restatement view as to pre-emptive clauses, either because this type of pre-emptive provision violates the common-law rule against perpetuities and/or is a restraint on alienation. See *Maynard* v. *Polhemus,* 74 Cal 141 (15 P 451) ; *H. J. Lewis Oyster Co.* v. *West,* 93 Conn 518 (107 A 138), and cases cited in 162 ALR 581, 582. Also, see *In re Rosher,* [1884] 26 Ch Div 801.

Our Court has always held that where one's fee is absolute, restraints on alienation are void as repugnant to the grant. In *Mandlebaum* v. *McDonell, supra,* the question arose as to whether a restraint on alienation for a reasonable length of time or for any time was valid. We there said (p 107) :

"The only safe rule of decision is to hold, as I understand the common law for ages to have been, that a condition or restriction which would suspend all power of alienation for a single day, is inconsistent with the estate granted, unreasonable and void."

We have continued to follow the principle of restraints on alienation as set forth in the above case by holding various types of pre-emption provisions void because they were restraints on alienation, *e.g., Smith* v. *Smith,* 290 Mich 143 (124 ALR 215), where a deed attempted to prohibit either 1 of 2 joint tenants from disposing of his interest in the property without the consent of the other joint tenant. The principle was also asserted in *Porter* v. *Barrett,* 233 Mich 373 (42 ALR 1267), and *Sloman* v. *Cutler,* 258 Mich 372, although in the latter case it was held that

a vendor could protect his remaining interest in the property by reasonable restraint while the contract was executory.

In *Braun* v. *Klug,* 335 Mich 691 (36 ALR2d 1434), a suit was instituted to quiet title to a parcel of land. It appears that in 1947 Francis X. Klug, Sr., and Mary A. Klug, his wife, deeded a parcel of land to plaintiffs. The deed contained the following provision:

"Grantees herein specifically covenant and agree that the above described property will not be sold to anyone except grantors herein or their heirs, representatives or assigns. It is agreed that this covenant shall run with the land."

We there said (p 695):

"The condition in the deed was that grantees were not to sell the property to anyone except grantors, their heirs, representatives or assigns. Such condition restricts the number of potential buyers. It is repugnant to the grant and a restraint on the inherent right of alienation and therefore void."

In the case at bar the option would become effective whenever the Brownells vacated the property either by sale, lease or death.

In 4 Restatement, Property, § 413 (comment on subsection 2, clause A), it is said:

"f. Price at which designated person can buy. When, by the terms of the restraint, the price at which the estate must be offered to the designated person is fixed or is to be a certain percentage of a third party's offer, there is substantial curtailment of the alienability of the land. A fixed price is usually set sufficiently low, in the light of possible developments, to enable the designated person to reap the benefits of any increase in value. The use of the percentage form assures the designated person of definite profit without need to speculate on future possibilities. In either case, the owner of the estate

will be deterred from attempting to sell his property because of the improbability that he will realize the full market value. This hindrance to alienation brings these provisions within the rules previously stated in §§ 406–411."

It should be noted that the pre-emption in the deed now before us falls squarely within the language of the above quote from the Restatement of Property, for regardless of what the duration of this option now under consideration is, it is clear that *at least at one time* the plaintiffs did have a pre-emption to repurchase the property in question at the fixed sum of $4,000.

During their lifetime Mr. and Mrs. Brownell were restrained from selling their home if they wished to sell it at a profit. Regardless of the reason why they might have originally bought the property in question, there may have been a time when they desired to sell it at a profit, but because of the option they could not do so. Under these circumstances, it was as effective a restraint as any direct restraint and should be so considered. We also note that a clear possibility that profit cannot be made on the sale of a given property will often deter people from selling their property and thus the alienability of their property is limited.

Because of the views heretofore expressed we find it unnecessary to determine the specific meaning of the option as it is a restraint on alienation and thus void *ab initio.*

It follows that the decree granting plaintiffs' bill for specific performance should be reversed and a decree should be entered dismissing plaintiffs' bill of complaint. No costs should be allowed due to the fact that the issue upon which this case is decided was not raised before the trial court.

BOYLES, J., concurred with SHARPE, J.

DETHMERS, J. I do not agree that the option is void nor concur in reversal.

1. Application of the common-law rule against perpetuities would leave the option intact because it was not exercisable beyond lives in being and 21 years, but was intended to and could be exercised only by and, hence, during the lives of the 2 option-ees or the survivor of them. Furthermore, although it has been applicable to real property in Michigan since the enactment of PA 1949, No 38,* in cases where deeds creating future estates were executed after the effective date of that act, the rule was superseded in Michigan, as relates to lands, from 1847 to 1949 by the statutory provisions governing suspension of the absolute power of alienation contained in RS 1846, ch 62, §§ 14, 15 (CL 1948, §§ 554.-14, 554.15 [Stat Ann §§ 26.14, 26.15]), repealed by the 1949 act. *Windiate* v. *Lorman,* 236 Mich 531; *Windiate* v. *Leland,* .246 Mich 659; *Rodey* v. *Stotz,* 280 Mich 90; 2 Simes, Future Interests, § 576, p 479. The deed containing the option having been delivered by plaintiffs to defendants' decedent and husband in the year 1926, the rule has no application to this case.

2. The mentioned statutory provisions read as follows:

"Sec. 14. Every future estate shall be void in its creation, which shall suspend the absolute power of alienation for a longer period than is prescribed in this chapter: Such power of alienation is suspended, when there are no persons in being, by whom an absolute fee in possession can be conveyed.

---

* CLS 1952, §§ 554.51–554.53 [Stat Ann 1953 Cum Supp §§ 26.49 (1)–26.49(3)]).—REPORTER.

"Sec. 15. The absolute power of alienation shall not be suspended by any limitation or condition whatever, for a longer period than during the continuance of 2 lives in being at the creation of the estate, except in the single case mentioned in the next section."

The option was not void under the statute for at least 2 reasons: First, it did not work a suspension of the absolute power of alienation, as defined in the statute, even for one instant, because at all times there were ascertainable persons in being, who, together, could have conveyed an absolute fee in possession, namely, the optionors and optionees. *Windiate* v. *Lorman, supra; Russell* v. *Musson,* 240 Mich 631; *Windiate* v. *Leland, supra; Rodey* v. *Stotz, supra;* so held, under like statutory provisions, in *Mineral Land Investment Co.* v. *Bishop Iron Co.,* 134 Minn 412 (159 NW 966, LRA1917D, 900). Second, had a suspension resulted under the definition of the statute, the period thereof would not have been longer than during the continuance of 2 lives in being at the creation of the estate.

3. Was the option void at common law? The distinction must be borne in mind between the statutory provisions against suspension of the absolute power of alienation for longer than 2 lives in being and the common-law rule prohibiting direct restraints on alienation for any period whatsoever, however short. As stated in 2 Simes, Future Interests, § 576, p 483:

"It is clear that the statutes with respect to the suspension of the absolute power of alienation do not modify the common-law rules prohibiting conditions or provisions directly in restraint of alienation. Such conditions, limitations, or restrictions, when applied to a fee simple estate, are void without regard to the period of time."

That this is true in Michigan appears from decisions involving future estates created during the period when the statute was in effect in such cases as *In re Estate of Schilling,* 102 Mich 612; *Watkins* v. *Minor,* 214 Mich 380; *Smith* v. *Smith,* 290 Mich 143 (124 ALR 215); *Braun* v. *Klug,* 335 Mich 691 (36 ALR2d 1434); *Porter* v. *Barrett,* 233 Mich 373 (42 ALR 1267); *Sloman* v. *Cutler,* 258 Mich 372. In these cases the statute was not mentioned and decision was made to rest on the common-law rule against direct restraints. Did the option at bar constitute a direct restraint on alienation, void at common law? In this connection Mr. Justice SHARPE quotes 4 Restatement, Property, § 413, which section takes the position that a pre-emptive option is a restraint, but that it is valid unless a fixed price is specified therein, in which event it is void. Fratcher, Perpetuities and Other Restraints, p 87. Whatever the common law may be in other jurisdictions, a pre-emptive option with fixed price is not void in Michigan. The 2 *Windiate Cases, supra,* involved a pre-emptive provision giving the optionee, at any time the optionor desired to sell, the first opportunity to purchase, for "not to exceed $1,000," property which another had thereafter agreed to buy from optionor for $8,000. In the first *Windiate Case* the pre-emptive provision was held to be valid on the ground that it did not violate the statute (p 534) "because at all times there were persons in being by whom an absolute fee in possession could have been conveyed." In the second *Windiate Case* that position was reaffirmed and this Court further held that the pre-emptive provision was not violative of the common-law rule prohibiting a direct restraint on alienation, that it could not be construed to be a restraint of alienation, because the optionor (p 664) "could have sold the land the second after he signed the option." This Court went on to say that though

he would have been required to give the optionee the first chance to buy, upon giving her notice, she would either buy or refuse, thereby confirming the optionor's right to sell to anyone else, so that, in consequence (p 664), "the alienation of the property was not tied up as a matter of law for a second's time." In that same vein, concerning pre-emptive provisions with fixed prices, in 2 Simes, Future Interests, § 462, pp 304, 305, it is said:

"Practical alienability might, in some instances, be restrained by such a contract, *but its primary purpose is to enable a particular person to buy, not to prevent any one from selling;* and doubtless the owner could alienate his property subject to the option if he wished."

The *Windiate Cases* are controlling of decision in this State and, accordingly, it must be held that the option here was not a direct restraint on alienation and, therefore, that it was valid. See, also, *Livonia Township School District* v. *Wilson,* 339 Mich 454.

Assuming, as suggested in Fratcher, Perpetuities and Other Restraints, pp 87, 88, 90, that the holding in the second *Windiate Case* establishes a rule contrary to 4 Restatement, Property, § 413, and the rule in effect in England and in many other jurisdictions (but not all, *e.g., Blakeman* v. *Miller,* 136 Cal 138 [68 P 587, 89 Am St Rep 120]; *Mineral Land Investment Co.* v. *Bishop Iron Co., supra; In re Upper New York Bay,* 246 NY 1 [157 NE 911]), even application of the Restatement position concerning the invalidity of fixed-price pre-emptive options to the option here involved would leave it intact because it is not pre-emptive. It is not a first-right-to-buy option to arise only if the optionors desire to sell, that being an essential characteristic of a pre-emptive provision. 2 Simes, Future Interests, § 462, p 305; Fratcher, Perpetuities and Other Restraints, p 87; 4 Restate-

ment, Property, § 393, comment F, and § 413; Schnebly, "Restraint Upon the Alienation of Property," in 6 American Law of Property, § 26.64, pp 506, 507. The mere fact that the option is to arise if the optionors do not at any time wish to use the property as a home does not make it equivalent to an option arising only if the optionor desires to sell and, therefore, pre-emptive. Rather, this is an ordinary option to arise on a condition precedent, *i.e.,* when the optionors do not wish to use the property as a home. That options may be created to arise on various conditions precedent appears in 4 Restatement, Property, § 393, comment F. Such an option, exercisable upon the happening of a condition precedent, is not regarded as a direct restraint on alienation and is everywhere held valid even though it specifies a fixed price, except that in jurisdictions where the rule against perpetuities is in effect as to lands, it would be void if exercisable beyond lives in being and 21 years. *Bates* v. *Bates,* 314 Ky 789 (236 SW2d 943); *Winstanley* v. *Chapman,* 325 Mass 130 (89 NE2d 506). The fact that an ordinary option, to arise upon the condition precedent that optionor ceases to use the land for a certain purpose, contains a fixed price does not make it any more a direct restraint on alienation or any less valid on that account. *Livonia School District* v. *Wilson,* *supra.* For a case recognizing the validity of a fixed-price option not made dependent on the happening of a condition precedent, see *Watkins* v. *Minor,* 214 Mich 380. Accordingly, it must be held that the option is valid, even under application of the Restatement rule.

I am aware of the line of Michigan decisions holding void provisions which work a direct restraint on alienation of lands. Typical are those relied upon in Mr. Justice Sharpe's opinion, namely, *Mandlebaum* v. *McDonell,* 29 Mich 78 (18 Am Rep 61);

*Smith* v. *Smith, supra; Sloman* v. *Cutler, supra; Porter* v. *Barrett, supra; Braun* v. *Klug, supra.* In none was the question presented, as here, of the validity of a mere option to purchase at a fixed price upon the happening of a condition precedent. Each involved an instrument which contained a direct prohibition against selling to anyone for a fixed period of time or without the consent of another, or against selling to certain people or to others than grantors. These clearly constituted direct restraints on alienation. Thus, in *Mandlebaum,* the will prohibited the sale of property, devised in fee simple, for a period of 21 years from date thereof. In *Smith* the deed conveying to father and son as joint tenants contained a clause that neither could sell without written consent of the other. In *Sloman* a provision in a land contract prohibiting assignment by the purchaser without the written consent of the vendor was held valid. In *Porter,* a provision in a land contract prohibited sale to colored persons. In *Braun* the deed provided that grantees covenanted not to sell to anyone except grantors or their heirs, representatives or assigns, the covenant to run with the land. All these were cases presenting a prohibition against a direct restraint on alienation. The instant case is distinguishable in the controlling respect that the option, as said in *Windiate* v. *Leland, supra,* did not tie up alienation of the property as a matter of law for a second's time. Its primary purpose, to repeat from Simes, was "to enable a particular person to buy, not to prevent any one from selling."

We come to the questions raised by the parties and passed upon by the trial court. Plaintiffs contended that the language of the option clause which provided that it was to be exercisable "if the second parties do not wish at any time to use the property as a home" was ambiguous, warranting introduction of parol evidence to show the intent of parties. The

trial court agreed and on that basis construed the
clause to mean that the option was exercisable when-
ever optionors "do not use or want to use the prop-
erty as a home." That construction is supported by
the testimony. So construed the option would sur-
vive and become exercisable when the optionors
ceased to use the property as a home, even though
due to their deaths. Such were the circumstances
under which plaintiffs sought to exercise it. Defend-
ants contended, on the contrary, that the clause was
not ambiguous, that for that and other reasons the
court erred in receiving parol evidence in explana-
tion of the option and intent of the parties, and that
it should be given the plain and simple meaning
which the words naturally import; and, finally, that,
read literally, the option could arise only at such
time, after its granting, when the optionors should
make the affirmative decision and choice "not to use"
the property as a home as they had been using it.
This, say defendants, would have required an overt
act on the optionors' part which they could have per-
formed only during their lifetimes and that, in con-
sequence, the language clearly discloses an intent
that the option could be exercised only during the
optionors' lifetimes and, hence, could not survive
their deaths. The difficulty with defendants' insist-
ence upon a literal reading of the language of the
option without benefit of explanatory testimony, is
that it leads to a result other than that contended
for by them. Defendants' contention as to the mean-
ing of the clause requires that it be read as though
its language were "if the second parties wish at any
time not to use," rather than, as it is, "do not wish at
any time to use." If the language were "wish at any
time not to use" it might be said to follow that such
"wishing" on the part of optionors would be an af-
firmative act which, of necessity, would have to occur
during their lifetime. On the other hand "not wishing

at any time to use" is a negative state, requiring no affirmative choice or decision, but implying rather, the lack of such a wish or its cessation, if it had theretofore existed, such as would occur at death, if not sooner. A literal reading of the option leads to the conclusion, unmodified by any evidence in the case, that it was exercisable at optionors' death.

Decree for specific performance affirmed, with costs to plaintiffs.

CARR, C. J., and BUTZEL, REID, and KELLY, JJ., concurred with DETHMERS, J.

SMITH, J., took no part in the decision of this case.