## Kintner v. Wruble

*John R. Morgan*, for plaintiff.
*Davis R. Hobbs*, for defendant.

PINOLA, P. J., specially presiding, July 30, 1958.— The sole question presented by the pleadings is one of law, and therefore counsel agreed that the court shall enter judgment for either defendant or plaintiff, depending on the validity or invalidity of a clause in a deed granting an option on condition to the grantee.

On February 18, 1941, plaintiff conveyed certain property in Meshoppen Township, Wyoming County, to defendant, the deed for which contains the following provision:

"The said grantor hereby covenants and agrees with the said grantee that the said grantee shall have the right, privilege or option to take or refuse the lands

hereinafter described, for the price or sum of $500.00 before the same shall be sold to, given to, or transferred to any other person by any means or manner whatsoever by the grantor or his personal representatives, heirs or devisees; the said lands being bounded and described as follows: . . ."

On October 4, 1952, the plaintiff filed a complaint asking that this provision be declared void (1) as against public policy, and (2) because it violates the rule against perpetuities.

At argument, his counsel withdrew the second objection.

On September 19, 1953, defendant filed his answer. After admitting all the averments of the complaint, defendant denies that the provision in question is against public policy and he avers that it relates "to an unimproved frame dwelling house, and a lot of land contiguous thereto, used or useful as grounds therefor, which is situate within the boundaries of the farm which was conveyed by the Plaintiff to the Defendant on February 18, 1941; it is also located adjacent to the barn on the said farm and by reason of these facts, it is particularly desirable that the owner of the farm have the opportunity to acquire the house, and disadvantageous to the owner of the barn that it be in the hands of other persons; it is further averred that on the date of the conveyance of the farm, the Plaintiff was a bachelor, crippled with arthritis, had been spending most of his time in Veterans' hospitals, and desired to retain the dwelling house that was a part of the farm so that he might have use of the same from time to time when he might be able to live outside Veterans' hospitals."

If the heirs or devisees of plaintiff were raising the question of the validity of the agreement, we could not blame them. However, no one should be allowed to impugn his own agreement based on consideration:

Grossman v. Hill, 384 Pa. 590, 594. In fact, the law does not look with favor upon a defense based on the unlawful act of the party interposing it: Conemaugh Gas Company v. Jackson Farm Gas Company, 186 Pa. 443, 455.

Plaintiff should be estopped, but our conclusion does not make such action necessary.

For the purpose of disposing of the matter, we must accept as true the well pleaded allegations of fact contained in defendant's answer: Toff v. Vlahakis, 380 Pa. 512, 513.

Likewise, every reasonable inference arising from the averments must be so accepted: Lehner v. Montgomery, 180 Pa. Superior Ct. 493. However, a final judgment will not be entered unless the case is free and clear from doubt: Sun Ray Drug Co. v. Lawler, 366 Pa. 571.

## Discussion

Writers and judges differ in their designation of defendant's privilege. Some refer to it as a conditional or contingent right, others call it a right of preemption, and still others call it a right of first refusal.

Counsel for plaintiff calls our agreement a promissory restraint and urges that it is invalid, because it violates the law as set forth in Restatement on Property §413(1). Counsel for defendant argues that the agreement is valid and cites the same section of the Restatement in support of his position.

We have read with much interest, but little profit, the restatement and the academic discussion contained therein. To try to follow the writer required considerable time, and in the end we, too, were on the sea of uncertainty.

As section 413(1) is not the law in Pennsylvania, we choose to ignore it.

The word "option" is not necessarily confined to an absolute binding option to purchase: 91 C. J. S. 836. A conditional option may be given. That is exactly what we have here, an option upon a condition precedent.

Plaintiff, the optionor, under this agreement reserves the right of retaining the property and not selling it to anyone, so that the optionee's privilege of purchasing it depends on the optionor's election to sell.

When the optionor decides to sell and sends a notice to the optionee that he desires to sell, the provision and the notice become an option: Chournos v. Evona Inv. Co., 97 Utah 335, 93 P. 2d 450.

Of course, plantiff's agreement involves a negative promise not to sell to anyone without giving defendant the first refusal, and to that extent it is a restraint on alienation, but that restraint is no more and no less than the same restraint on his right to sell to another when he has, for a consideration, given an absolute option. That partial restraint is recognized and upheld by all the courts. We submit that the useful, social purpose served by it is served equally by an option on condition. In each case, dealing at arm's length and for a consideration, the one grants a right to the other.

Simes and Smith in their work, The Law of Future Interests (2 ed.), sec. 1154, consider an option as, at most, an indirect restraint. They argue that if an option contract is valid, subject to the rule against perpetuities, a contract giving one the first right to purchase property at a fixed price should also be valid, subject to the same limitation. With this we agree.

They argue, however, that where the preëmption clause takes the form of a condition subsequent creating in the grantor a right of reëntry, the future interest of the grantor is not, in the United States, subject to the rule against perpetuities and therefore

the validity of the provision would be made to depend solely on the form in which it is cast. We cannot see any objection to this, for whether it be an option or an option on condition precedent, it must not violate the rule against perpetuities. So, why should the difference in form give any concern?

In 6 American Law of Property 509, sec. 26.66, the authors declared:

"As a practical impediment to alienation, the ordinary option is far more from objectionable than many preemptions. For the duration of an option, the property subject thereto cannot be sold to any other person at any price, without a liability on the part of the transferee to divestiture upon subsequent exercise of the option. For its entire duration, therefore, an option continues as a clog upon alienation, unless the optionee can be induced to release it. A preëmption . . . may create no impediment whatever to transfer of the property."

Referring to the various authorities, they conclude, section 26.67:

"In dealing with the pre-emption cases, the courts have not followed consistently either the rule against perpetuities or the rule against restraints upon alienation. It is difficult, therefore, to determine with certainty what kinds of pre-emptions are valid."

And Thompson, 4 Real Property 626, sec. 2083, declares that "the authorities differ in construing restraints on alienation for a limited time," and he cites a long list of cases on both sides.

Before considering the cases, we must remember that we do not have a clause in a conveyance which is repugnant to the grant. What we have is a separate, independent contract, based on consideration and granting an option on condition precedent.

Our search fails to reveal any appellate court deci-

sion in Pennsylvania. We do, however, have an option on condition precedent in Dattolo v. Stevenson and Ida, 93 Pa. Superior Ct. 588. There the agreement provided that "upon the expiration of this lease, the party of the second part will have preference for renewal for two years. It is also agreed that party of the first part will give the party of the second part preference in sale of property, *in case party of the first part desires to sell* same at the end of three years." (Italics supplied.)

"We agree with the court below that the word 'preference' was not used in two totally different senses in the same paragraph; that it did not give the lessee the fast option of purchasing the property at the end of the term, but a preference or prior right over any other purchaser on the same terms, if the lessor decided to sell."

Two of our lower courts have dealt with somewhat similar problems.

In Concannon v. Haile, 81 D. & C. 480, a provision in a deed which otherwise conveyed an estate in fee simple, was to the effect that "if either of the parties hereto desire to sell their respective properties, the other party shall have the first right to purchase the same at the fair market value of the property at the time of said sale." Judge Troutman declared it invalid because violative of the rule against perpetuities and as imposing an unreasonable restraint on the alienation of the land, it being possible that the fair value could not be determined without litigation. In dicta he declared that there is a substantial curtailment of the alienation of the land when the price at which the estate must be offered to the former owner is fixed or is less than the full market value.

In Reichman v. Fisher, 60 D. & C. 673, the lease contained a provision that lessee "shall have first option on buying the property" at a stated price. Judge

Dannehower held that this did not give the lessee an absolute option to purchase at that price, but the right thus acquired is conditional upon the desire or the purpose of the lessor to sell. He said, page 675:

"We feel that the only possible meaning of the words 'first option' in the present case is an option conditional on the desire or purpose of the lessor to sell, for the same reasons as are succinctly expressed in the opinion of the court in R. I. Realty Co. v. Terrell, 254 N. Y. 121, 124, as follows: . . .

" 'The use of the words "first privilege" indicates that the parties must have had in mind some other opportunity of the lessor to sell and that the lessor was not prevented from selling to another if he desired. It bound the lessor, however, not to sell to another for that price without first giving the lessee the opportunity or privilege to purchase the property at the price specified, and, if the lessee did not exercise the privilege to purchase, the lessor was free to sell to anyone else. The words "first privilege" did not grant an absolute option to the lessee to purchase the premises at any time during the term of the lease. The right of the lessee to purchase depended upon the lessor's desire to sell. If the lessor desired to sell at the price named, then the lessee was to have the "first privilege to buy" at the figure specified.' "

And he concluded:

"The facts in the above cited case are exactly the same as those in the present case, with the minor exception that the word 'privilege' is used rather than 'option'. The reasoning appears sound and we therefore apply it in deciding the question before us."

We find only two cases in other jurisdictions holding an agreement invalid where the price is fixed. These are: In re Rosher, 26 Ch. D. 801 (1884), and Lewis Oyster Co. v. West, 93 Conn. 518, 107 Atl. 138.

On the other hand, the cases supporting the agreement are numerous.

In several jurisdictions, namely, Kentucky, Alabama, Indiana and Ontario, restraints on alienation are upheld if they are not unreasonable. Measured by that test, our option must be upheld.

It must be borne in mind that a small house is involved and that it should have been included in the sale of the entire farm. Only because of plaintiff's ill health, only to accommodate him when he wanted to use it during his absence from the hospitals, did the grantee agree not to insist on its conveyance at the time. What is a farm without a home upon it? On the other hand, who would want to live in a small house next to a barn unless he had to in order to take care of the animals and the barn proper?

In Garcia v. Callender, 125 N. Y. 307, 26 N. E. 283, there was a covenant by the grantee that the grantor "shall have the right of pre-emption of the premises conveyed" at the price of $12,000. The court held that this merely gave him the right to buy the property in preference to anyone else, whenever the grantee is willing to sell at that price. In approaching the problem, the court said:

"No proof was given upon the trial to show what was the purpose of the parties in inserting this peculiar covenant in the deed, and we must therefore give construction to it from the language alone."

Here we have proof of the purpose of the parties inserting the covenant in the deed. And what is more, it is a reasonable provision agreed upon to carry out a laudable and legitimate purpose.

In Roemhild v. Jones, 239 F. 2d (C. C. A., 8th Cir.), 492, the deed contained a proviso "reserving (to the grantor) the right to repurchase said land from the grantee if he should at any time offer the same for

sale." The court held that it was not void as violating the rule against perpetuities. As for the argument that the provision was against public policy, the court quoted from 73 C. J. S. §13 (*b*), pp. 195, 196, as follows:

". . . In many jurisdictions restraints on alienation are not invalid as against public policy if they are reasonable although they will not be upheld unless they serve a legal and useful purpose, or unless positive law or public policy demands it.

"Where restraints are not ipso facto void, whether a substantial restraint on alienation is valid depends on the particular circumstances; and the public policy against restraints on alienation may be relaxed where the circumstances convince the court that it is a reasonable means of accomplishing a purpose recognized as proper. . . ."

In Kershner v. Hurlburt, 277 S. W. 2d (Mo.) 619, the court held a restraint bad where the price was fixed at $1,275. However, the court declared, page 625:

"(W)hether a particular restraint in substance on alienation like or similar to the instant one, and imposed by contract as in the present case, and which does not violate the rule against perpetuities, is valid or invalid depends on whether or not it is reasonable or unreasonable under the particular facts and circumstances. Thus, we do not subscribe to the view that every restraint which is for life or lives and whether effected by specific language absolutely prohibiting a sale or by a provision fixing a price at which property must be offered for sale to one before it may be sold to another, is invalid. As noted, we adopt the view that contracts, such as the one in question, which require an offer to a specified person at a fixed price before the property may be sold to another, are valid or invalid, depending upon the purpose or purposes to be accomplished by the particular contract."

On the basis of reasonableness, we believe the agreement here must be sustained.

The courts upholding provisions containing fixed prices are numerous. Such provisions are to be found in three types of cases: in independent contracts, in deeds and mostly in leases.

At the outset, we do not wonder that so many decisions uphold agreements containing a fixed price, because in our judgment it is absurd to argue that the fixed price renders the agreement void.

Price is generally an essential ingredient of every contract for the transfer of property or interests therein and must be certain or capable of being ascertained by the terms of the contract. So, with every option contract, a fixed price or a means must be agreed upon to determine the price before it can be valid: Driebe v. Fort Penn Realty Company, 331 Pa. 314.

If a fixed price be necessary in an option, why should its presence in an option upon condition render it null and void?

An option on condition precedent was held valid in Lantis v. Cook, 342 Mich. 347, 69 N. W. 2d 849. The court held that an option clause in a deed reciting that if grantees did not wish at any time to use property as home, grantors should have *first privilege* to purchase at any future time *at price stated in deed,* was not violative of statutory provisions governing suspension of absolute power of alienation, where the option did not work suspension of power of alienation since at all times there were ascertainable persons in being who could have conveyed absolute fee in possession, and where, had suspension resulted under definition of a statute, the period thereof would not have been longer than during continuance of two lives in being at the creation of the estate.

The court said it "was aware of decisions holding void provisions which work a direct restraint on alienation of land (citing cases). In none was the question presented, as here, of the validity of a mere option to purchase at a fixed price upon the happening of a condition precedent."

In Garcia v. Callender, supra, both parties to the deed were dead when plaintiff, after 31 years from the date of the deed, contended that he had the right to tender $12,000 and compel a conveyance to him, though the property was then worth double the sum tendered. The court concluded that the agreement was not for an absolute option but rather that "the term (preëmption) is used here to express the idea that someone has the right first to purchase, when the land is offered for sale or the option of buying first."

In Hall v. Crocker, 192 Tenn. 506, 241 S. W. 2d 548, concerning a clause in the deed which gave the grantor the option to repurchase the property should the grantee desire to sell the land, the court said:

"The clause is merely an option to repurchase retained by the grantor in this deed. . . It is simply a contract by which the grantor retains in himself the right to buy this property at a *fixed* price within a certain time. Such an option may be taken unless it violates the rule against perpetuities. . . . We think it does not."

The court referred to the extensive and satisfactory discussion upon the rule against perpetuities, where an option is retained, in Barton v. Thaw, 246 Pa. 348. In that case the lower court, whose opinon was approved, declared, page 357:

"The optionee . . . does get something conveyed to him, that is, the right to call for a conveyance of the land if he elects to purchase in the manner specified. *The owner parts with his right to sell his lands, except to the second party, for a limited period.* It is a uni-

lateral agreement containing the terms and conditions upon which the optionor agrees to sell and convey his land not yet ripened into an absolute contract to sell and convey on one side and to purchase and pay on the other."

The court also said at page 356:

"An option is not a sale. . . . It is simply a contract by which the owner of property agrees with another person that he shall have the right to buy his property at a *fixed price* within a certain time."

Wherein is a conditional option any different from an option, except for the fact that the owner must first express his willingness to sell?

In Hall v. Crocker, supra, on petition for rehearing, the court said on page 512:

". . . by the opinion it was made known to the parties that we did not consider the clause quoted in the original opinion as such a restraint upon the alienation of the property as to be void. We cannot see why parties to this deed did not have the right to enter into an option to repurchase this property so long as this option did not violate the rule against perpetuities. We do not think that it can be questioned that the parties independently of the deed could have entered into a binding option to repurchase this property so long as the option did not violate the rule against perpetuities."

In Dodd v. Rotterman, 330 Ill. 362, 161 N. E. 756, a mother conveyed property to her daughter and the daughter signed a separate agreement, agreeing not to transfer the property to any other person without her mother's consent and to deed it to her at any time she would demand it. The court said the agreement not to transfer is an illegal restraint, but the agreement to convey is enforceable, reading the deed and the contract together.

The court held the agreement was not a condition subsequent resulting in a forfeiture, but a covenant which might be enforced in equity.

The court then went into the special facts and circumstances surrounding the family situation and the ownership of the farm, and declared on page 369:

"The doctrine is well established that one person may purchase land of another and agree to sell it back to him on the payment of a *stipulated price*. Such contracts are always sustained where the transactions are in good faith and not tainted with fraud. . . The agreement gave no estate in the land to Mrs. Evans and no interest in it. It was a mere personal privilege to demand the reconveyance of the farm. . . . The daughter's agreement was with Mrs. Evans alone, and the privilege granted was personal to her. It did not purport to extend to her assigns or to her heirs. From the character of the transaction, the relation of the parties, their circumstances and conduct at the time, the daughter's covenant must be construed as extending a personal privilege to the mother to resume her ownership of the farm whenever future circumstances might make it seem desirable to her to do so. This privilege was not assignable, and would not descend to her heirs. The contract, therefore, did not violate the rule against perpetuities."

In Iowa Farm Credit Corporation v. Halligan, 214 Iowa 903, 241 N. W. 475, the grantor conveyed property containing 177 acres to his son and declared in the deed that "no part of the land herein conveyed shall be by the grantee or his heirs deeded or sold or conveyed during the life of the grantor, Anthony Halligan, without his consent." The son mortgaged 72 acres. The father claimed that under another provision in the deed the son was to have paid him $2 per acre annually so long as he lived. The court said, page 907:

"It seems to us that the purpose of the grantor to

reserve some right touching the alienation of the land is almost as clearly expressed as it could be. The omission to include the exact agreement is not necessarily fatal. The intention being readily ascertainable from the instrument and the surrounding circumstances, and such intent being valid and enforceable, it seems to us that full effect must be given thereto. On this point, the court is of the opinion that the provision in the deed *is not necessarily* repugnant to the estate conveyed and is not, therefore, void."

In Coley v. Hord, 250 Ky. 250, 62 S. W. 2d 792, defendant delivered a deed to plaintiff of property for $1,000. It was agreed that he should retain and have an option to purchase the land at any time that the grantee desired to sell and grantor desired to purchase it at the same price, allowing the grantee for the value of any improvements which might increase its value. The court held that the writings evidencing the option and the deed were construed as one instrument and that the option was valid because it did not violate the rule against perpetuities.

The cases involving conditional options in leases are numerous. A long list is to be found in the annotations in 127 A. L. R. 894, and 136 A. L. R. 138.

The general principle applicable is stated in 51 C. J. S. 631, Landlord and Tenant, §80, as follows:

"A provision giving the lessee the first privilege of purchasing is valid and binding, and ordinarily constitutes a covenant running with the land. Such a provision, of itself, does not give the lessee a binding 'option', since the lessor has the right to retain the property and not sell to anyone."

In Koppi v. Gallagher, 230 N. Y. S. 680 (1927), a lease contained a recital that "tenant shall have the first option of purchasing the said premises during the term," at price specified "and conditions to be mutually agreed upon." The court held that tenant had only

the right to refuse to purchase at price specified, provided landlord desired to sell.

In Rigby's Estate, 62 Wyo. 401, 167 P. 2d 964 (1946), dealing with a first privilege, the court declared on page 413:

"The conditional or contingent right under this kind of a contract is often distinguished from an 'option' by calling it a right of 'pre-emption' or of 'first refusal.'"

It held that the contract of decedent "involved a negative promise not to sell to anyone else without giving the lessees the right of first refusal. . . . This negative promise ran with the land and operated as a restraint on alienation of the land in the hands of those who succeeded to the title on the death of the promisor."

And in Chournos v. Evona Inv. Co., supra, a provision in the lease gave lessees first opportunity to purchase leased land for price lessor would receive from other parties. The court held that it did not constitute an option, but such provision and lessor's notice to lessee that lessor would sell land to another for price offered by him, unless lessees paid the same or greater sum by a certain time, constituted an option to be accepted by a definite time, and said:

"When the company sent out the notice pursuant to that provision, the two (the provision and the notice) became an option to be accepted, if accepted, by a certain definite time, in a certain definite amount, and in accordance with the intent of the terms of the agreement."

In Crecente v. Vernier, 53 N. M. 188, 204 P. 2d 785, (1949), a provision in the lease giving lessee first privilege of purchasing property if lessee later decided to purchase it, was construed as though it recited that if lessor should desire to sell her property, she would give lessee first privilege of purchasing it if later he desired to purchase it. The court said, page 198:

"The word 'option' is not necessarily confined to an absolute binding option to purchase. There was a conditional option given and it was therefore an option contract, but this does not mean that the option was unlimited. The fact that she gave notice that she would not sell her land, indicates that she did not consider the option absolutely binding on her."

In Hake v. Groff, 232 Mich. 233, 234, 205 N. W. 145 (1925), a clause of the lease read as follows:

" 'The first party also agrees to sell to the second party the said property for the sum of nine thousand dollars, and the second party does and has agreed to pay nine thousand dollars for the same during the life of this lease. In other words, the first party gives the first refusal to the second party to purchase same.' "

The court declared:

"Considering every provision of the lease in connection with the circumstances and conditions under which it was executed, we are of the opinion that the plaintiff's 'first refusal' to purchase depended upon the defendant's decision to sell in the event that he decided to remain in California. If he desired to sell, the plaintiff was to have the first opportunity to buy for consideration of $9,000."

The circumstances of this case are somewhat similar to ours. Defendant, who was conducting a coal business on the premises, because of ill health desired to go to California and to lease the premises during his absence. Should he decide to return, he wanted possession of the property at the termination of the lease.

In Nu-Way Service Stations Inc., v. Vanderberg Bros. Oil Co., 283 Mich. 551, 278 N. W. 683, (1938), an option in a 10-year lease provided that if lessor desired to sell the property at the end of the term of a lease, for a period of 90 days lessee should have first

chance to purchase on most favorable terms. The court held that:

"The option in question is valid and . . . . constitutes a covenant running with the land."

In all these lessee cases we have partial restraints of alienation. The clause in our deed involves no more. Accordingly, we conclude that the provision in this deed is valid because it is reasonable under the circumstances and because it is a conditional agreement which may ripen into an option upon the expression by the plaintiff of his desire to sell. Being based on consideration, plaintiff cannot now repudiate it.

We, therefore, enter the following

### Order

Now, July 30, 1958, at 10 a.m., upon due consideration of the pleadings, judgment is entered in favor of defendant, Jacob Wruble, and against plaintiff, Arthur S. Kintner.