CHARLES H. CAVE *vs.* JOSEPH C. OSBORNE.

Middlesex.   November 20, 1906. — January 2, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Contract*, Implied: common counts, Performance and breach. *Words*, "Tender."

In an action to recover an instalment of the purchase price and sums of money expended for improvements upon land which the defendant agreed to convey to the plaintiff under an oral contract, which afterwards the defendant repudiated and refused to perform, the plaintiff in order to recover must show that he was ready and willing and offered to perform his part of the contract.

In an action on an executory contract requiring the payment of purchase money on the part of the plaintiff, if the judge in charging the jury makes use of the word "tender" in a popular sense as meaning a readiness, willingness and ability to perform providing the other party performs his part, and the plaintiff does not ask the judge to explain the sense in which the word is used, it will be assumed that the word was used and understood in such popular sense, and the plaintiff afterwards cannot complain because the use of the word in its technical sense would have been inaccurate.

CONTRACT, to recover an instalment of the purchase price and sums of money expended for improvements upon land which the defendant agreed to convey to the plaintiff under an oral contract, which, as the plaintiff alleged, afterwards was repudiated by the defendant.   Writ dated October 4, 1901.

At the trial in the Superior Court before *Harris*, J. it appeared in evidence that the plaintiff, on or about July 20, 1901,

* Now R. L. c. 189, § 72.

made an oral contract with one Place, the authorized agent of the defendant, to purchase certain land in Middleborough belonging to the defendant for the sum of $150, of which $25 was to be paid at once, $25 in three months thereafter and the rest in monthly instalments of $5 a month.

The property in question consisted of two lots of land, upon one of which was an old barn which had been disused for many years, and before the agreement of purchase it was understood that the plaintiff was purchasing for the purpose of making a home for himself and his family, with a view to rebuilding or repairing the barn so as to make it a habitable home. On July 29 the plaintiff went to the land in question and began the work of repairing and rebuilding the barn with the knowledge and consent of the owner and of the owner's agent. In a short time thereafter the plaintiff's family came to Middleborough and began to occupy the place, while the plaintiff continued his work of making improvements thereon.

The plaintiff introduced evidence that thereafter, on or about August 7, 1901, he had an interview with the defendant, in which the defendant agreed to sell him the premises for the price of $75, the other terms to remain as before.

The plaintiff also introduced evidence that after this interview he continued the work of improving the property, and that the defendant, on or about August 17, told him that he did not think he could carry out his agreement, as he was bound to his agent for his commission of $100 and he could not get out of it without giving Place a deed to the premises. The plaintiff replied that he should hold him to his agreement, and forbade him to give any deed to Place, and said that he would pay the whole of the price as soon as he could, or he would pay what he could and give him a mortgage for the balance; that accordingly, on August 31, having already paid $25 to Place, the defendant's agent, he went to the defendant's house, tendered him $31 in cash and asked for his deed and said he would give a mortgage for the balance, but that the defendant refused to give him a deed or to accept the tender of cash.

Evidence was introduced by the defendant tending to show that the interview between the plaintiff and the defendant took place at a later date than August 7, and that the defendant, after

agreeing on that day to accept $75 as the purchase price for the place, immediately, or soon after on the same day, repudiated the agreement.

It further appeared on cross-examination of the plaintiff that at the interview of August 31, when the plaintiff tendered the $31 in cash, he did not have with him a mortgage drawn or ready to be executed.

In charging the jury the judge, among other instructions, instructed them as follows:

" Now, if he did make a contract, either the one or the other, if he substituted one for another, then the question is, Did he comply with the terms of that contract? Mr. Osborne has stated that he was ready to sell the place for $75 cash, that he wouldn't sell the place upon instalments, and that he ratified the action of Mr. Place in selling for him, except so far as the terms of deferring payments of five dollars a month for a considerable period, and that Mr. Place said, ' Very well, I will pay $75,' and he said, ' All right, the trade is complete; then I ratify the contract upon those terms,' and Mr. Place then took the property upon his hands, paying to him the money.

" If the contract was made and this plaintiff didn't comply with the terms of the contract which he himself says were entered into, either the $75 contract to pay the same in full or to give part mortgage, did he ever tender a mortgage? Did he ever tender the full amount of $75? Those are questions of fact for you. If he didn't, then he is not entitled to recover, because the whole failure of the transaction comes by reason of his own neglect, and not by reason of the owner or of the owner's agent."

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions " to the portion of the charge in regard to the plaintiff's offer or tender to comply with the terms of the contract," and particularly to the language above quoted.

*N. Washburn,* for the defendant.

*W. B. Farr,* for the plaintiff.

SHELDON, J. The substantial effect of the instructions given to the jury was that the plaintiff would be entitled to recover if he showed that he had made such an agreement as he testified that he made with the defendant for the purchase of the land in

question, that he himself had complied with the terms of the agreement so far as the parties had gone, and had offered to pay the full agreed price either wholly in cash or partly in cash and partly by a mortgage upon the property, and that the defendant refused to comply with the agreement; but that the plaintiff could not have a verdict unless he on his part did comply with the terms of the agreement by paying or tendering the agreed price, if, that is, the failure of the transaction came by reason of his own neglect and not from the fault of the defendant.

The oral agreement made between these parties was not void from the beginning; it was simply unenforceable by action if the objection that it was not in writing was taken against its enforcement. *DeMontague* v. *Bacharach*, 181 Mass. 256. If the defendant did repudiate the agreement for this reason, the plaintiff could recover back whatever payments he had made under it to the defendant. *DeMontague* v. *Bacharach*, 187 Mass. 128. *Cromwell* v. *Norton, ante*, 291. Such part payments would not take the case out of the statute of frauds. *Thompson* v. *Gould*, 20 Pick. 134. So, if the defendant without any sufficient excuse refused to make the conveyance and thus himself violated the agreement in an essential particular, the plaintiff could elect to treat the agreement as abandoned, and could hold the defendant to repay to him any partial payments already made therefor, as if they had not been made under a special contract. *Brown* v. *Woodbury*, 183 Mass. 279, 282, and cases there cited.

But whether the plaintiff's cause of action rested on the one or the other ground, it was equally necessary for him to show that he was himself in no default, or, as the judge at the trial put it, that the transaction failed because of the defendant's fault and not by reason of the plaintiff's own neglect. If he was not himself ready and willing to carry out the agreement, he cannot maintain this action. *Pead* v. *Trull*, 173 Mass. 450. This was substantially the instruction given to the jury; and we are of opinion that it was right.

Not having asked for more specific instructions at the trial, the plaintiff cannot now complain of the judge's use of the word "tender." It is doubtless true that this word, as commonly used in such a connection, imports nothing more than the manifesta-

tion of a present readiness, willingness and ability to perform, provided the other party will perform on his part. *Cook* v. *Doggett*, 2 Allen, 439, 441. But because this meaning is involved in the word, its use was sufficient in the first instance. If the plaintiff had thought that his interests required it, he doubtless would have asked the judge to make this explanation. *Barker* v. *Loring*, 177 Mass. 389. *Commonwealth* v. *Meserve*, 154 Mass. 64, 75.

*Exceptions overruled.*