*Northern District*
No. 7985

## PAUL E. MERRILL, d/b/a MERRILL TRANSPORT CO.

### v.

## KIRKLAND CONSTRUCTION CO., INC.

Argued: March 15, 1973 - Decided: July 2, 1973

*Present:* Cowdrey, P.J., Forte, Flynn, JJ.

Case tried to *Doyle, J.* in the Third District Court of Eastern Middlesex, No. 3923 of 1971.

**Flynn, J.** This is an action of contract to recover for services allegedly rendered to the defendant during the periods of August 7, 1969 through August 14, 1969; August 15, 1969 and August 18, 1969 through August 27, 1969, the value of which was $5,217.80, plus interest from August 25, 1969. The answer is a denial of contractual relations and the Statute of Frauds.

At the trial there was evidence tending to show that:

In August, 1969 the defendant Kirkland

Construction Co., Inc. (Kirkland) was responsible as general contractor for the construction of a project in Boston which was referred to as the "Flower Market". The project required certain pre-cast concrete beams. Under the terms of a subcontract, dated February 18, 1969, between the defendant and Structural Contract Corporation of Laconia, New Hampshire (Structural) supply, delivery and installation of said pre-cast beams were the responsibility of Structural. Structural is not a party to this action. Structural agreed with the plaintiff, Merrill Transport Co. (Merrill), that Merrill would deliver Structural's beams to the project and, between August 7th and August 27th, Merrill made such deliveries pursuant to bills of lading issued by Merrill at Structural's request. The bills of lading were issued by Merrill without consultation with Kirkland and named Structural as the shipper, Kirkland as the consignee, Merrill as the carrier. Deliveries were made at the job site pursuant to the bills or lading to Structural's representative "Tracy" who was Structural's representative on the job site at the Flower Market.

It was stipulated that all the items carried by the plaintiff were manufactured by Structural and were delivered at the Flower Market site by Merrill. The fair value of the charges for transportation of the beams, is $5,217.80.

Merrill is a duly licensed interstate motor

carrier and the deliveries involved were interstate.

Except for a letter from Merrill to Kirkland requesting Kirkland to agree to pay Merrill directly, which letter was dated August 18, 1969, and which was never answered by Kirkland, there was no direct contact oral or written between Merrill and Kirkland.

Merrill has received no payments from Kirkland or Structural. Structural declared bankruptcy on August 28, 1969. At no time has Merrill asserted a claim in bankruptcy against Structural.

In January 1969 Merrill advised Structural that it would no longer accept Structural's credit. Then on August 11, 1969, Mr. Wilfred C. Crateau, comptroller of Structural, telephoned Kirkland and spoke to Mr. Allen Schultz, its Vice-President. Crateau informed Schultz that if he wanted his product, would he accept collect charges? Schultz answered "yes" and Crateau went on to say that checks would be made payable jointly to Structural and Merrill, and that credit for the payments would be given Kirkland on its own contract with Structural.

On August 14, 1969 Crateau wrote Kirkland informing that his company Structural had advised Merrill to bill Kirkland directly for its transportation costs and again mentioning that the check was to run jointly to Structural and Merrill.

On August 18, 1969 Merrill wrote to Kirkland asking the latter to "please confirm our understanding that all transportation costs for the hauling of Structural concrete from Auburn, Maine (a place of business of Structural) to the Flower Market in Boston, Mass. are to be paid to us by you. Your acknowledgment of this letter by signature below and return of one copy would be appreciated."

This letter was received and date stamped August 20, 1969 by Kirkland but the requested acknowledgment was not returned.

The trial judge made findings of fact in accord with the foregoing and then ruled and found as follows:

"Section 323 of Title 49 of the United States Code imposes liability on a consignee (other than the shipper) for the interstate freight costs for goods accepted by a consignee except in cases not material hereto.

I find that the defendant is statutorily liable to the plaintiff for the freight tariff of $5,217.80 and is contractually liable on the same obligation in the amount of $5,217.80 in quantum meruit."

The defendant presented requests for rulings, which, with the court's disposition thereof, are as follows:

1. There is insufficient evidence to warrant a finding for the plaintiff. *Denied.*

2. The evidence warrants the finding for the defendants. *Allowed.*

3. Defendant's silence was not an acceptance of plaintiff's offer sufficient to form a contract. *Allowed.*

4. Written or testimonial evidence of custom and usage in the industry is irrelevant in a contract action against the defendant unless there is independent evidence to show acceptance. *Allowed.*

5. Custom and usage in the trade or industry cannot take the place of an oral or written acceptance of a contract on which to base an award of damages. *Allowed.*

6. The evidence shows that the defendant never had an agreement with the plaintiff. *Denied.*

7. If there was never any agreement by the defendant to pay the plaintiff then the plaintiff may not recover, irrespective of any provision of federal law. *Denied.*

"I find an agreement implied in law."

The defendant being aggrieved by the denial of his requests numbered 1, 6 and 7 claimed a report.

The defendant raises two issues for our consideration.

1. Was there a contract between the plaintiff Merrill and the defendant Kirkland, whereby Kirkland is liable to pay Merrill for its trucking services rendered?

2. If not, may liability be imposed on Kirkland for Merrill's charges by virtue

of Title 49, United States Code section 323?

We answer both questions in the negative.

▇▇▇ Other than its claim upon a statutory basis under the United States Code, which will be dealt with later in the opinion, the only basis upon which the plaintiff can recover from the defendant is by proof of a contractual relation between the parties. Furthermore, the existence of a contract, express or implied, is generally essential to recovery in *quantum meruit*. 98 C.J.S. 717. *Russo* v. *Charles Hosmer Inc.,* 312 Mass. 231. We fail to perceive a contractual relation either express or implied between the parties.

There was never any direct oral or written contract between Kirkland and Merrill and an implied contract could not be found to exist unless the conduct of the parties under the existing circumstance made such an inference or implication reasonable. Corbin on Contracts, §564. Though there was privity of contract between Structural and each of the parties there was none between Kirkland and Merrill.

The contract dated February 18, 1969 between Structural and Kirkland is clear that the materials to be furnished and the work to be done by Structural was the furnishing of labor, materials, tools, equipment, staging and the performing of operations in connection with Precast Prestressed Concrete as per the

Specifications (to which Specifications the parties agreed to be bound under the terms of their contract).

Merrill was not a party to this contract, nor is Merrill mentioned in the contract document; nor is any language found in the contract document constituting Structural as Kirkland's agent in making any other contracts for labor or materials which Structural as a principal had bound itself to provide. There was no finding by the trial judge of any agency or anything in the report to indicate that Structural was an agent at any time of either the plaintiff or the defendant. Nor did any consideration run from Merrill to Kirkland to support Kirkland's promise.

■■ The general rule of law is that a person who is not a party to a simple contract, and from whom no consideration moves, cannot sue on the contract, and consequently that a promise made by one person to another for the benefit of a third person who is a stranger to the consideration will not support an action by the latter. *Exchange Bank of St. Louis* v. *Rice,* 107 Mass. 37. *Black* v. *Budish,* 279 Mass. 102. *Larsen* v. *Jeffrey-Nicholas Motor Co.,* 279 Mass. 362. Thus, a person for whose benefit a promise is made to another person from whom alone the consideration moves, cannot maintain an action against the promisor "unless the latter has also made an express promise to the plaintiff or the promisee acted as the

plaintiff's agent merely." *New England Structural Co.* v. *Bail Works Company*, 231 Mass. 274.

On the other hand the plaintiff did have an agreement with Structural, the shipper, to deliver Structural beams to the project where Structural was performing under its own contract with the defendant.

■ If the defendant Kirkland's statement were to be construed as a promise to pay the plaintiff Merrill, that which Structural under its own agreement with Merrill was bound to pay Merrill for its services as carrier, the promise not being in writing, would be unenforceable under the Statute of Frauds, GLA c. 259, §1, "Second" as a charge upon a promise to answer for the debt of another, which defense has been pleaded. However, even if the statement of the defendant had been written and not oral, in any event the statement was made not to Merrill but to Structural and the latter as promisee would be the proper party to sue the defendant upon the promise.

There was no express contract between Merrill and Kirkland, nor a contract implied in fact which to be established must have as its basis an agreement of the parties concerned and an intention to create a contract, although that intention has not been expressed in terms of contract. Corbin on Contracts, §19. *Milford* v. *Commonwealth,* 144 Mass. 64.

■ Nor do we find a contract implied in

law between them. Such a contractual obligation is occasionally raised by the law itself, sometimes as a matter of public policy, and sometimes to prevent the unjust enrichment of one person at the expense of another. *Cromwell* v. *Horton,* 193 Mass. 291.

The present situation does not fall within the category of cases where obligations are imposed by law even though there has been no agreement of the parties, either express or implied.

▇▇▇ There has been no unjust enrichment of the defendant Kirkland at the expense of the plaintiff. Any benefit conferred by Merrill's performance enured directly to Structural and, in turn, any benefit Kirkland may have received by the delivery of the beams to the job site came about as a result of performance by Structural under the terms of its own sub-contract with Kirkland, under which Kirkland was obligated to pay Structural a substantial sum to perform.

▇▇▇ Turning to the statutory basis (49 U.S.C. §323) of the plaintiff's claim, the pertinent part of statute involved reads as follows:

"No common carrier by motor vehicle shall deliver or relinquish possession at destination of any freight transported by it in interstate or foreign commerce until all tariff rates and charges thereon have been paid, except under

such rules and regulations as the Commission may from time to time prescribe to govern the settlement of all such rates and charges, including rules and regulations for weekly or monthly settlement, and to prevent unjust discrimination or undue preference or prejudice: Provided, that the provisions of this section shall not be construed to prohibit any such carrier from extending credit in connection with rates and charges on freight transported for the United States for any department, bureau, or agency thereof, or for any State or Territory, or political subdivision thereof, or for the District of Columbia. Where any common carrier by motor vehicle is instructed by a shipper or consignor to deliver property transported by such carrier to a consignee other than the shipper or consignor, such consignee shall not be legally liable for transportation charges in respect of the transportation of such property (beyond those billed against him at the time of delivery for which he is otherwise liable) which may be found to be due after the property has been delivered to him, if the consignee (a) is an agent only and had no beneficial title in the property, and (b) prior to delivery of the property has notified the delivering carrier in writing of the fact of such agency and absence of beneficial title.''...

A condition precedent to the imposition of any statutory liability on Kirkland is that

Kirkland be found to be the actual consignee of the items delivered.

Although the bills of lading designated Structural as the shipper, Kirkland as the consignee and Merrill as the carrier, if appears to us that Structural was the actual consignee.

The bills of lading designating Kirkland as consignee were issued by the carrier Merrill at Structural's request without consultation with the defendant Kirkland, and the deliveries of the beams from Structural place of business in Auburn, Maine were made at the job site not to the defendant but to Structurals representative, "Tracy.". Structural was the owner of the items shipped, as well as the consignor thereof, and it received and accepted delivery of its beams on the job site where it was performing under its contract with the defendant notwithstanding the designation of Kirkland as "consignee" on the bills of lading.

Structural under the terms of its subcontract with Kirkland was to supply, deliver and install pre-cast beams and perform all operations in connection with the said beams. Again, there was no finding that Structural was Kirkland's agent for the purpose of accepting delivery of the beams.

The defendant cannot be held to such an obligation (to pay the charges) unless it authorized the shipper to act for it or has by

its own conduct rendered itself liable. *American Railway Express Co.* v. *Mohawk Dairy Co.*, 250 Mass. This statute applies only to those who accept delivery. The defendant did not accept delivery. *Pennsylvania R. R.* v. *Lord & Spencer, Inc.*, 295 Mass. 179. Charges cannot be collected of the defendant in the absence of an obligation on its part to pay them. *American Railway Express* v. *Mohawk Dairy Co.*, 250 Mass. 1.

In the absence of the defendant's assumption of the role of consignee, we fail to see how the defendant can be held liable under the statute. There is nothing to indicate that it was aware at any time of its designation as consignee on the bills of lading which designation was made without its knowledge.

We are of the opinion that the denial of the defendant's requests for rulings numbers one, six and seven was error.

The finding for the plaintiff is to be vacated and judgment is to be entered for the defendant.

COHN, RIEMER & POLLACK
  for Plaintiff

WITHINGTON, CROSS, PARK & GRODEN
  for Defendant