**Fayo ROSSI, Plaintiff**

v.

**Mary Margaret GULLA f/k/a Mary Margaret O'BRIEN, Defendant**

**No. 7530**

Superior Court
Commonwealth of Massachusetts

**April 9, 1981**

**Alan B. Brams,** counsel for plaintiff
**Glenn M. Shriberg,** counsel for plaintiff
**Richard A. Gould,** counsel for defendant

## MEMORANDUM OF DECISION

This jury-waived action was consolidated for trial with another matter pending in the Land Court.[1] The consolidated actions were tried and the jury returned verdicts on the five questions certified from the Land Court. Specifically, the jury determined that based on the evidence adduced at trial no agreement to convey certain real property was to be found. [2] The jury responses have been certified by this Court and returned to the Land Court. The following Memorandum of Decision is addressed to the original jury-waived action commenced in Superior Court.

The complaint of the plaintiff Fayo Rossi (Rossi), as amended, sets forth two separate counts. The first count asserts that Mary Margaret Gulla (Gulla) owned an undivided one-half interest in property located at 147 Pinehurst Street, Roslindale, Suffolk County, Massachusetts which is the subject matter of both of the consolidated actions and that Rossi and Gulla entered into an oral agreement during May, 1973 wherein Rossi agreed to pay Gulla $10,000 and Gulla agreed to convey and release all of her right, title, and interest in the property to Rossi. The second count seeks redress for $10,000 owed by Gulla to Rossi for money lent to Gulla by Rossi on June 15, 1973. Gulla's answer, as amended, presents no counterclaims or alternative defenses.

The Court makes the following findings:

Gulla is the daughter of Rose E. (O'Brien) Rossi (Rose) and her first husband. Rossi married Rose in 1966, thus becoming Gulla's step-father. Rossi and Rose resided together as husband and wife at 47 Pinehurst Street, Roslindale, (The House), The House is a three-residence building. Rossi and Rose resided in one of the three units and rented the remaining two. The title to the house was, as of June 1, 1973, held jointly by Rose and Gulla. At this time, both Rossi and Rose were employed and maintained at least one joint savings account to which both had contributed.

At or about this time, Gulla and her'

---

[1] In that case there was a demand for a jury trial on certain issues which were certified to this Court by the Land Court for jury determination. **Mary Margaret Gulla, f/k/a Mary Margaret O'Brien v. Orpheus J. Rossi, a/k/a Fayo Rossi,** Civil Action No. 81075.

[2] The questions certified and verdicts returned. were as follows:

1. Did Mary Margaret Gulla, the plaintiff, and Orpheus J. Rossi, the defendant, enter into an agreement on or about May, 1973 whereby the defendant was to pay to the plaintiff the sum of $10,000 in consideration of which the plaintiff was to convey to the defendant her interest in the premises at 47 Pinehurst Street in the Roslindale district of the City of Boston, County of Suffolk?
2. Did the plaintiff and the defendant alternatively enter into an agreement on or about May, 1973 whereby the defendant was to own said premises as joint tenants with the plaintiff and her mother and in consideration of a conveyance to effectuate such agreement, the defendant was to pay the plaintiff the sum of $10,000?
3. Did the defendant pay the plaintiff on or about June, 1973 the sum of $10,000 as consideration for the agreement described in either Issue I or Issue 2?
4. What was the fair market value of said premises in June, 1973? **"$29,000"**
5. What was the fair market value of said premises on March 30, 1975? **"32,000"**

husband were looking for a home of their own. Rossi and Rose jointly borrowed the sum of $10,000, pledging their joint savings account as collateral for their joint obligation. The proceeds of this loan were deposited in the joint checking account of Rossi and Rose and, on or about June 15, 1973, Rossi drew a personal check on this account in the amount of $10,000 and transferred it to Gulla who applied it toward the down payment on a home at 57 Strafford Road, Westwood, which was intended to be the house of Gulla and her husband, they having purchased it jointly for approximately $34,000. Rossi intended that the sum transferred was a loan, while his wife, Rose, intended it as a gift.

Since June 15, 1973, Gulla has never paid anything to Rossi on account of the $10,000 transferred to her. Rossi himself repaid and discharged his and Rose's joint loan obligation out of his own earnings and funds.

Rose died on March 26, 1975, title in the house vesting as matter of law in Gulla. Rossi continued to reside at the house, using an apartment therein with the permission of Gulla, although he paid no rent or other consideration to Gulla for such use and occupation. Rossi made but one improvement to the property since the death of Rose—he erected a chain link fence around the property.

From these facts, the Court draws the following conclusions of law:

Rossi seeks specific performance of an oral agreement wherein Rossi would pay to Gulla the sum of $10,000 in consideration for which Gulla would convey to Rossi some or all of her interest in the house. The jury returned a verdict that no such agreement existed. The Court considers itself bound by the jury verdict on this issue. Although the claims presented and relief sought in the two actions are different, and the two actions were consolidated not fused, **Lumiansky v. Tessier,** 213 Mass. 182, 188-190 (1912), since the issue presented is substantially identical, this Court ought properly defer to the jury resolution. The Court takes this to be the teaching of contemporary Seventh Amendment jurisprudence. **Ross v. Bernhard,** 396 U.S. 531 (1970). **Dairy Queen, Inc. v. Wood,** 369 U.S. 469 (1962). **Beacon Theatres, Inc. v. Westover,** 359 U.S. 500 (1959). See Note, "The Right to a Jury Trial in Complex Civil Litigation," 92 Harv.L.Rev. 898, 900-902 (1979).

Alternatively, even were the issue open, this Court agrees with the jury verdict and concludes, even apart from the issues of the statute of frauds[3] and Rossi's alleged part performance,[4] that there was no underlying agreement to convey.

[3] The statute of frauds was not pleaded in the present action as required. Mass. R. Civ. P. 8(c). **Rozene v. Sverid,** 4 Mass. App. Ct. 461, 465 (1976). It was pleaded in the Land Court action.

[4] Rossi argues that his part performance of the alleged oral agreement is sufficient to estop the invocation of the statute of frauds by Gulla. G.L. c. 259, § 1(4). Even viewing the evidence most favorably toward Rossi, the doctrine of part performance is inapplicable in these circumstances. As often stated by the courts, the doctrine, to be applicable, requires that the party seeking to apply it pay substantial consideration for the real property, take possession of the premises and make substantial improvements to them. **Potter v. Jacobs,** 111 Mass. 32, 37 (1872); **Low v. Low,** 173 Mass. 580, 582 (1899); **William v. Carty,** 205 Mass. 396, 397-400 (1910); **Curran v. Magee,** 244 Mass. 1, 5-6 (1923); **Andrews v. Charon,** 289 Mass. 1, 3-4 (1955); **Nichols v. Sanborn,** 320 Mass. 436, 438 (1946). **Weinstanley v. Chapman,** 325 Mass. 130, 132-133 (1949); **Fisher v. MacDonald,** 332 Mass. 727, 729 (1955); **Gordon v. Anderson,** 348 Mass. 787, 787 (1965). There must be substantial proof present on the record to support a finding as to each element. **Young v. Reed,** Mass. App. Ct. (1978) 41.

Rossi, although in limited possession of the house, has not shown that he is in possession of the entire house as a result of the alleged agreement with Gulla. Rossi began residing in the house after his marriage to Gulla's mother; he remained a by-product of this union and not as a result of agreement with defendant. **Glass v. Hulbert,** 102 Mass. 24, 28 (1869); **Taber v. Shields,** 258 Mass. 511, 512 (1927).

In addition to possession, there must also be some change in the condition or position of the

Rossi's second count seeks repayment of the $10,000. This claim is in the nature of equitable relief arising in the absence of an enforceable express agreement. Even were this court to conclude that Rossi may not recover on this count as pleaded, it is not limited to the specific relief requested and may decree appropriate relief based on the material allegations which are supported by the evidence. **North Easton Cooperative Bank v. MacLean,** 300 Mass. 285, 295 (1938) citing **Alder Bros. Co. v. Dunn,** 264 Mass. 355, 363 (1928).

Here a contract implied in law can be imposed. **Merrill v. Kirkland Construction Co., Inc.,** 51 Mass. App. Dec. 129, 135-137 (1973). Rossi has failed to convince either jury or judge that there was an oral promise to convey, but restitution for amounts paid by him which were not intended as gifts and have not been repaid is available. **Cook v. Doggett,** 2 Allen 439, 446 (1861); **Cave v. Osborne,** 193 Mass. 482, 485 (1907); **DeMontague v. Bacharach,** 187 Mass. 128, 131 (1905). The **Cook** Court, in discussing the plaintiff's action to recover money had and received under an oral contract for purchase of a piece of land, noted at 440 that an action would lie to recover the money paid where the other party now refuses to perform. The present situation is analogous. Rossi will not be left remediless in the inequitable position of having tendered or provided, with the expectancy of a conveyance or as a loan, certain monies from which Gulla has received benefit. Compare **Nelson v. Pederson,** 361 Mass. 392 (1972). Such a result would unjustly enrich Gulla.

The instant case presents an additional consideration not found in **Cook v. Doggett, supra,** since Gulla contends that the money received as an **inter vivos** gift from her mother and therefore no repayment can be required. Whether the transfer of $10,000 to the use and benefit of Gulla was intended as a gift must be ascertained from the intentions of the donors at the time of the initial transaction.' **Saulnier v. Saulnier,** 328 Mass. 238, 240 (1952).

There is little doubt of Rose's intent. An event occurred here which is not uncommon to familial settings. Gulla and her husband, recently married, were trying to purchase a home for themselves. They needed money for the down payment and she sought help from her mother. The evidence is insufficient to establish that, as to Rose, the transaction was other than a gift. **Nichols v. Edwards,** 16 Pick.62, 63, (1835); **Robinson v. Robinson,** 366 Mass. 582, 586 (1974).[5]

However, Rossi's intentions must be determined along with those of Rose. Rossi joined in the transaction by obligating himself to repay the loan along with Rose, by drawing the check to Gulla to transfer the money, and by himself repaying the loan obligation to the bank. The Court concludes that this evidence refutes the presumption of sufficient donative intent attributable to Rossi to support the conclusion that he intended to make an absolute gift to defendant. Compare **Powell v. Powell,** 260 Mass. 505, 509 (1927).

The presumed intent of Rose to make an **inter vivos** gift was, however, unrebutted at trial and therefore stands.

---

party seeking relief by reason of an inducement by the other party to make such changes. The making of substantial repairs and improvements can constitute such part performance to estop assertion of the statute of frauds. **Potter v. Jacobs, supra; William v. Carty, supra.** The circumstances shown in these cases are not present here.

Rossi has done little to the house which involves substantial expense to him. **Hazelton v. Lewis,** 267 Mass. 533, 540 (1929). Indeed, it remains unclear whether these improvements were made as a result of any inducement by Gulla.

[5] The transfer of money among and between family members raises a rebuttable presumption that the money or property delivered was intended as a gift, advancement or settlement for the donee's benefit. **Pollock v. Pollock,** 223 Mass. 382, 384 (1926); **Siegel v. Siegel,** 238 Mass. 587, 588 (1921).

This Court, therefore, concludes that the transfer of $10,000 to Gulla must be viewed as two transactions, one a gift and the other not.

In arriving at the exact recovery due Rossi, this Court notes that both he and Rose pledged their joint savings account as collateral for the loan of $10,000. Where husband and wife hold a savings account in joint names, they are considered to each have a corresponding one-half interest in the account balance. Some evidence was available which tended to show unequal contribution to the pledged savings account by Rossi and Rose. Rose was said to have contributed anywhere between 45% to 65% of the account balance. This evidence was insufficient to overcome the presumed equal shares of the Rossis in the account. **Malone v. Walsh,** 315 Mass. 484, 490 (1944); **Kittridge v. Manning,** 317 Mass. 689, 694 (1945).

It therefore follows that Rossi and Rose each had authority to pledge one-half of their joint bank account against their obligations on the loan and would have a corresponding right to direct one-half of the loan proceeds. Rossi, having not intended to give to Gulla the $5,000 due him from the loan proceeds is entitled to recovery of this amount from Gulla, plus $549 (the aggregate of mortgage payments made by Rossi after Rose's death) after a set-off for the fair market rental value of the apartment—which the Court finds to be $160 per month—occupied by Rossi without payment of rent after the death of Rose in March, 1975 until April, 1978, inclusive. **Cuddy v. Kipp,** 52 Mass. App. Dec. 95, 101-102 (1973). Since the set-off extinguishes Gulla's liability, judgment will enter for Rossi for nominal damages.

Accordingly, the Court finds for the defendant on the first count and for the plaintiff on the second and awards the plaintiff judgment in the amount of $1.00.

By the Court.

**William G. Young**
**Justice of the Superior Court**